UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                          Chapter 11

ROTHSTEIN ROSENFELDT ADLER, P.A.

                                                Case No. 09-34791-BKC-RBR

        Debtor.

_____/

### NOTICE OF APPEAL
### BY PLATINUM PARTNERS VALUE ARBITRAGE FUND LP, CENTURION STRUCTURED GROWTH LLC, AND LEVEL 3 CAPITAL MANAGEMENT LP

Pursuant to 28 U.S.C. § 158(a), Federal Rule of Bankruptcy Procedure 8001, and Bankr. S.D. Fla. Local Rule 8001-1, Platinum Partners Value Arbitrage Fund LP, Centurion Structured Growth LLC, and Level 3 Capital Management LP ("Appellants"), by and through their undersigned counsel, hereby give notice of appeal to the United States District Court for the Southern District of Florida from (a) *Memorandum Opinion Granting Trustee's Motion to Compromise Controversy with Berenfeld Spritzer Shechter & Sheer and Motion to Compromise Controversy with Razorback* [ECF No. 1307], entered on January 7, 2011 (the "Memorandum Opinion") and (b) *Bar Order Pursuant to Settlement Agreement Between Trustee Herbert Stettin and Berenfeld Spritzer Shechter & Sheer, LLP* [ECF No. 1320], entered on January 10, 2011 (the "Bar Order"). The Bar Order is a subsequent order relating to the Memorandum Opinion and therefore, pursuant to Local Rule 8001-1, the appeal of the Bar Order does not require a separate notice of appeal and filing fee.

In accordance with Local Rule 8001-1, a copy of the Memorandum Opinion is annexed hereto as Exhibit A and a copy of the Bar Order is annexed hereto as Exhibit B.

The names of the parties to the orders appealed from and the names, addresses and telephone numbers of their respective attorneys are as follows:

| Party | Counsel of Record |
|---|---|
| Platinum Partners Value Arbitrage Fund LP Centurion Structured Growth LLC, and Level 3 Capital Management LP | Scott L. Baena, Esq.<br>Jay M. Sakalo, Esq.<br>Matthew I. Kramer, Esq.<br>Jeffrey I. Snyder, Esq.<br>Bilzin Sumberg Baena Price & Axelrod LLP<br>1450 Brickell Avenue, Suite 2300<br>Miami, Florida 33131<br>Telephone: (305) 374-7580<br>Facsimile: (305) 374-7593<br><br>-and-<br><br>Eliot Lauer, Esq.<br>Gabriel Hertzberg, Esq.<br>Curtis Mallet-Prevost, Colt & Mosle LLP<br>101 Park Avenue<br>New York, New York 10178-0061<br>Telephone: (212) 696-6000<br>Facsimile: (212) 697-1559 |
| Rothstein Rosenfeldt Adler, P.A. | PRO SE<br>6600 NW 16 St. #11<br>Plantation, Florida 33313 |
| Herbert Stettin, Chapter 11 Trustee | Paul Steven Singerman, Esq.<br>Frank Scruggs, Esq.<br>Isaac Marcushamer, Esq.<br>Berger Singerman, P.A.<br>200 Biscayne Boulevard, Suite 1000<br>Miami, FL 33131<br>Telephone: (305) 755-9500<br>Facsimile: (305) 714-4340<br><br>-and-<br><br>John H. Genovese, Esq.<br>David C. Cimo, Esq. |

| | Jesus M. Suarez, Esq. |
|---|---|
| | Genovese, Joblove, & Battista, P.A. |
| | Bank of America Tower |
| | 100 Southeast Second Street, 44th Floor |
| | Miami, Florida 33131 |
| | Telephone: (305) 349-2300 |
| | Facsimile: (305) 349-2310 |
| Berenfeld Spritzer Shechter & Sheer LLP | Norman A. Moscowitz, Esq. |
| | Jane W. Moscowitz, Esq. |
| | Moscowitz & Moscowitz, P.A. |
| | Sabadell Financial Center |
| | 1111 Brickell Avenue, Ste. 2050 |
| | Miami, Florida 33131 |
| | Telephone: (305) 379-8300 |
| | Facsimile: (305) 379-4404 |
| Razorback Funding, LLC and other parties collectively referred to as the "Razorback Victims" | William R. Scherer, Esq. |
| | James D. Silver, Esq. |
| | Conrad & Scherer, LLP |
| | 633 South Federal Highway |
| | Fort Lauderdale, Florida 33301 |
| | Telephone: (954) 847-3324 |
| | Facsimile: (954) 463-9244 |
| | |
| | -and- |
| | |
| | Harley S. Tropin, Esq. |
| | Charles Throckmorton, Esq. |
| | David L. Rosendorf, Esq. |
| | Kozyak Tropin & Throckmorton, P.A. |
| | 2525 Ponce de Leon, 9th Floor |
| | Coral Gables, Florida 33134 |
| | Telephone: (305) 372-1800 |
| | Facsimile: (305) 372-3508 |
| Banyon 1030-32, LLC Noteholders I | Paul J. McMahon, Esq. |
| | Paul Joseph McMahon, P.A. |
| | 2840 S.W. Third Avenue |
| | Miami, Florida 33129 |
| | Telephone: (305) 285-1222 |
| | Facsimile: (305) 858-4864 |
| | |
| | -and- |
| | |
| | Robert P. Avolio, Esq. |

| | Avolio & Hanlon, P.C.<br>Crossroads Corporate Center<br>3150 Brunswick Pike, Suite 120<br>Lawrenceville, New Jersey 08648<br>Telephone: (609) 219-1810<br>Facsimile: (609) 219-1812 |
|---|---|
| Banyon 1030-32, LLC Noteholders II | Paul J. McMahon, Esq.<br>Paul Joseph McMahon, P.A.<br>2840 S.W. Third Avenue<br>Miami, Florida 33129<br>Telephone: (305) 285-1222<br>Facsimile: (305) 858-4864<br><br>-and-<br><br>Mark S. Shipman, Esq.<br>Shipman, Sosensky & Marks, LLC<br>20 Batterson Park Road, Suite 120<br>Farmington, Connecticut 06032<br>Telephone: (860) 606-1700<br>Facsimile: (860) 606-1770 |
| Wak Boys, LLC d/b/a/ LMB Funding Group and Greenwood Capital Partners, LLC | Robert C. Furr, Esq.<br>2255 Glades Road, Suite 337W<br>Boca Raton, Florida 33431<br>Telephone: (561) 395-0500<br>Facsimile: (561) 338-7532 |
| FEP Victims Group | Geoffrey S. Aaronson, Esq.<br>Geoffrey S. Aaronson P.A.<br>100 S.E. 2nd Street, 27th Floor<br>Miami, Florida 33131<br>Telephone: (786) 594-3000<br>Facsimile: (305) 675-3880 |
| Circle K Family, LLC, Robert A. Kimmel, as Trustee of the Robert A. Kimmel Grantor Retained Annuity Trust, Marvin P. Kimmel, as Trustee of the Marvin P. Kimmel IRRL, Deborah Marlin, as Trustee of the Deborah Marlin Revocable Trust U/A 06/01/98, Kenneth Marlin, Edward C. Saltzman, and Mary Lorie Saltzman | Francis L. Carter, Esq.<br>H. Eugene Lindsay, Esq.<br>Katz Barron Squitero Faust<br>2699 South Bayshore Drive, 7th Floor<br>Miami, Florida 33133<br>Telephone: (305) 856-2444<br>Facsimile: (305) 285-9227 |
| Official Committee of Unsecured Creditors | Michael I. Goldberg, Esq.<br>Akerman Senterfitt<br>Las Olas Centre II, Suite 1600<br>350 East Las Olas Boulevard<br>Fort Lauderdale, Florida 33301-2229<br>Telephone: (954) 463-2700 |

| | Facsimile: (954) 463-2224 |
| Office of the United States Trustee | Steven D. Schneiderman, Esq. |
| | Office of the United States Trustee |
| | 51 SW First Avenue |
| | Room 1204 |
| | Miami, Florida 33130 |
| | Telephone: (305) 536-7285 |
| | Facsimile: (305) 536-7360 |

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE
& AXELROD LLP**
*Counsel to the Appellants*
1450 Brickell Ave., Suite 2300
Miami, Florida 33131
Telephone: 305-374-7593
Facsimile: 305-351-2253

By:   /s/ Scott L. Baena
      Scott L. Baena, Esq.
      Florida Bar No. 186445
      Jay M. Sakalo, Esq.
      Florida Bar No. 156310
      Matthew I. Kramer
      Florida Bar No. 0937231
      Jeffrey I. Snyder
      Florida Bar No. 21281

      -and-

**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**
*Co-Counsel to the Appellants*
101 Park Avenue
New York, New York 10178-0061
Telephone: 212-696-6000
Facsimile: 212-697-1559
      Eliot Lauer, Esq. (*pro hac vice*)
      Gabriel Hertzberg, Esq. (*pro hac vice*)

# EXHIBIT A

ORDERED in the Southern District of Florida on _01-07-11_.



Raymond B. Ray, Judge
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

RECEIVED
Bilzin Sumberg
By gportes at 5:04 pm, Jan 07, 2011
DOCKETED

In re:

ROTHSTEIN ROSENFELDT ADLER, P.A.,          CHAPTER 11

      Debtor.                               CASE NO.: 09-34791-BKC-RBR

_____/

**MEMORANDUM OPINION GRANTING TRUSTEE'S MOTION TO COMPROMISE
CONTROVERSY WITH BERENFELD SPRITZER SHECHTER & SHEER [D.E. 1123]
AND MOTION TO COMPROMISE CONTROVERSY WITH RAZORBACK [D.E. 1204]**

    **THESE MATTERS** came before the Court for evidentiary hearing on December 21,

2010 upon the Trustee's Motion to Compromise Controversy with Berenfeld Spritzer Shechter &

Sheer LLP ("BSSS") [D.E. 1123] (the "BSSS Motion") and the Trustee's Motion to

Compromise Controversy with Razorback Plaintiffs' to Resolve the Razorback Plaintiff's

Objection [D.E. 1204] (the "Allocation Motion"). BSSS Joined in the BSSS Motion [D.E.

1170]. Objections to the Motions were filed by Razorback Funding, LLC [D.E. 1147], Philip

Arvidson [D.E. 1152], the FEP Victims Group Joinder [D.E. 1183, 1244], Greenwood Capital

Partners, LLC and LMB Funding Group [D.E. 1187, 1228], the United States Trustee [D.E.

1239], Platinum Partners Value Arbitrage Fund LP, Structured Growth LLC and Level 3 Capital

Management LP [D.E. 1240], and Circle K Family, LLC, et al. [D.E. 1238]. Trustee Herbert Stettin for the estate of Debtor Rothstein Rosenfeldt Adler, P.A. filed a Response to the Objection filed by Razorback Funding [D.E. 1179].

The Court has considered all of the evidence admitted at the hearing, including the testimonial evidence offered by proffer and accepted by the Court without objection by any party.[1] The Court has also considered the relevant portions of the record in this case. The following shall constitute the Court's findings of fact and conclusions of law.[2]

For the reasons set forth below, the Court grants the BSSS Motion and the Allocation Motion and overrules all objections thereto. This Court has the authority to enter the proposed Bar Order that is fair and equitable.

## I. FINDINGS OF FACT

### A. Procedural History

On August 4, 2010, the Trustee filed suit against BSSS asserting claims for negligence, breach of contract and aiding and abetting a breach of fiduciary duty, Case No. 10-03485-RBR. The Trustee also objected to the proof of claim filed by BSSS [Claim No. 38]. *Stettin v. Berenfeld Spritzer Shechter & Sheer LLP*, 10-3485-RBR (Bankr. S.D. Fla. 2010) [D.E. 1]. On August 10, 2010, the Trustee and Razorback[3] made a joint demand upon BSSS and its insurer, Lexington Insurance Company ("Lexington"), for $10 million—the policy limits under the sole policy of insurance available to cover losses relating to any claims against BSSS and Lexington. Prior to the Trustee's demand, on November 10, 2009, Razorback had filed suit in Broward

---

[1] The only testimony subject to any objection in this multi-witness day-long evidentiary hearing was that of Richard A. Pollock, the forensic accountant for the Trustee. The Funds moved to strike, *ore tenus*, Mr. Pollock's testimony because an expert report was not provided to all parties prior to the hearing. The Court denied that motion based on Bankruptcy Rule 9014(c).

[2] The findings of fact and conclusions of law set forth in this Order shall constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, as made applicable to these proceedings by Fed. R. Bankr. P. 9014. To the extent any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall later be determined to be a finding of fact, it shall be so deemed.

[3] "Razorback" are the parties listed in footnote 1 of D.E. 1147.

County Circuit Court against BSSS and several other defendants, and on July 16, 2010, made a demand upon BSSS for tender of the $10 million policy limits. *Trustee's Exhibit* 1. Eventually, the Trustee reached an agreement with BSSS and Lexington. The agreement was memorialized in the Settlement Agreement attached to the BSSS Motion as Exhibit A (the "BSSS Settlement").

## B. The BSSS Motion

On November 3, 2010 the Trustee filed the BSSS Motion seeking Court approval of the BSSS Settlement. [D.E. 1123] The BSSS Settlement calls for a payment of $10 million (the "Settlement Payment" or "Settlement Proceeds") to be tendered jointly to the Trustee and Conrad & Scherer LLP, counsel to Razorback, as payees. In return for this payment and a waiver of the BSSS claim against the estate, the Trustee would withdraw his claims against BSSS. The settlement is conditioned upon, *inter alia*, the dismissal of the Razorback claims and the claims of the Banyon Noteholders, and the entry of a bar order (BSSS Motion Exhibit A-2 (the "Bar Order")). The Bar Order includes a permanent injunction and a permanent bar of the prosecution of any and all claims against BSSS, its employees, its partners, including Tracy D. Weintraub, Gary Berkowitz, Brian Leitstein, and any successors and their partners, and employees "in regard to any and all matters arising out of the involvement of BSSS in transactions, acts or events in any manner related to Scott W. Rothstein ('Rothstein'), RRA, and/or Banyon 1030-32 LLC and its predecessors, affiliates, successors, and related entities (collectively, 'Banyon')." [D.E. 1123 at pg. 30].

## C. Objections to the BSSS Motion

On November 12, 2010, Razorback filed its Objection ("Razorback Objection") [D.E. 1147] to the BSSS Motion. The Razorback Objection principally argued: (1) that the Razorback Plaintiffs' claims are independent claims and that this Court lacks jurisdiction to enter the Bar Order in respect of the Razorback Plaintiffs' claims; and (2) the BSSS settlement did not provide

an allocation to Razorback of the Settlement Proceeds which were to be paid jointly to the Trustee and Razorback.

On November 16, 2010, a group known as the Banyon Noteholders[4] filed a Joinder to the Razorback Objection (the "Banyon Noteholders Joinder") [D.E. 1152]. The Banyon Noteholders' Joinder argues that they stand to gain nothing from the BSSS Settlement because they did not file proofs of claim in the RRA bankruptcy case. The Banyon Noteholders also echoed the Razorback Objection that the Court lacked jurisdiction to enter the bar order that is required to effectuate the BSSS Settlement.

On November 24, 2010, the FEP Victims Group[5] ("FEP") filed a Joinder [D.E. 1183] ("FEP Joinder") to the Razorback Objection. FEP argues that the entry of a bar order requires the commencement of an adversary proceeding against affected third parties, pursuant to Fed. R. Bankr. P. 7001(7). FEP also reiterates the arguments regarding the jurisdiction of the Court to enter the proposed bar order. Finally, FEP argues that the BSSS Settlement is unfair because all creditors will share in the proceeds from the BSSS Settlement, rather than just those who relied upon the BSSS audit. Subsequently, on December 17, 2010, FEP filed its supplemental objection [D.E. 1244] (the "FEP Supplemental Objection"), in which it restates a jurisdictional objection to the bar order. It also objects to the Allocation Motion.

On November 29, 2010, WAK Boys LLC ("WAK") and Greenwood Capital Partners, LLC ("Greenwood"), collectively filed a Joinder [D.E. 1187] (the "WAK Joinder") to the objections that had been filed by other parties. On December 15, 2010, the WAK Joinder was withdrawn [D.E. 1228].

On December 17, 2010, the Office of the United States Trustee ("UST") filed its

---

[4] The "Banyon Noteholders" are the parties indentified in D.E. 870.
[5] The "FEP Victims Group" are the parties identified in D.E. 1182.

4

Objection to the BSSS Motion [D.E. 1239] (the "UST Objection"). The UST objects to the proposed bar because the court lacks jurisdiction over third party claimants who are not subject to the jurisdiction of the Court in this case. The UST's reason for objecting is that the bar order "may have the effect of curtailing potential third party actions against [BSSS] without conferring any benefit on these hypothetical third parties or those other bankruptcy estates which are directly impacted by the proposed settlement and which have their own creditors and standing." [D.E. 1239 at 4].

On December 17, 2010, the Funds filed an Objection to the BSSS Motion [D.E. 1240] ("Funds' Objection"). The Funds object to the bar order because their claims against BSSS would be barred. They also argue that the Court lacks jurisdiction to enter the bar order.

**D. Allocation Motion and Objections thereto**

On December 9, 2010, the Trustee filed the Allocation Motion.[6] The Allocation Motion calls for the payment of $5 million to Razorback (the "Razorback Payment"). In return for the Razorback Payment, Razorback's allowed unsecured claim shall be reduced by $5 million.

On December 17, 2010, the Circle K Family, LLC group of creditors (collectively, "Circle K")[7] filed an Objection to the Allocation Motion [D.E. 1238] (the "Circle K Objection"). Circle K's objection to the Allocation Motion is that it "violates the fundamental premise of the Bankruptcy Code, [sic] that any distribution is to be equitable." Circle K would rather that "the entire [Settlement Payment] be made part of the [RRA] estate for *pro rata* distribution to all creditors once claim amounts have been finalized."

The FEP Supplemental Objection [D.E. 1244] takes issue with the allocation to the

---

[6] The Allocation Motion resolves the Razorback Objection to the BSSS Motion and the issue of allocation of the Settlement Payment between the estate and Razorback. Since this Court approves the Allocation Motion, then the Razorback Objection to the BSSS Motion shall be deemed withdrawn. Razorback shall procure the withdrawal of the Banyon Noteholders' Joinder.

[7] The Circle K creditors are the parties identified in D.E 1238.

Razorback Plaintiffs. FEP argues that the Allocation Motion violates the general bankruptcy consideration that like creditors should be treated the same because Razorback will receive the Razorback Payment prior to the completion of the claims reconciliation process and the approval of a chapter 11 plan.

Finally, the Funds' Objection [D.E. 1240], while styled as an objection to the Allocation Motion, does not actually raise a substantive argument against the Allocation Motion.

### E. Service of BSSS Motion and Allocation Motion

The Court finds that service of the BSSS and Allocation Motions and notice of the hearings thereon were both appropriate and sufficiently broad to reach all interested parties. The Court's noticing agent, Trustee Services Inc. ("TSI"),[8] filed two certificates of service [D.E. 1141 (the "Initial Service") and D.E. 1186 ("Supplemental Service")] detailing the service of the BSSS motion on all interested parties. Pursuant to D.E. 1141, TSI served every known interested party related to the case—approximately 5,000 parties. This includes all parties who filed a proof of claim, all parties listed on the debtor's schedules, all parties who are listed on the sealed list of former clients of RRA, and all parties who have entered a notice of appearance.

Additionally, at the Trustee's request, after investigation and with the input of BSSS, the Trustee served all known parties that were involved with Banyon that were not already included in the Initial Service—approximately 300 additional parties. The Supplemental Service reached all but four of the FEP claimants. While it is obvious by their appearance and objection that the four FEP parties who did not receive written notice of the BSSS Motion received actual notice of the BSSS Motion and the hearing thereon, Trustee's counsel has represented that such parties did not appear in Banyon's books and records as having participated in any transactions with

---

[8] TSI was appointed as Agent of the Court pursuant to this Court's Order Approving Chapter 11 Trustee's Application for Approval of Employment of Trustee Services, Inc. As Notice, Claims and Balloting Agent of the Bankruptcy Court [D.E. 205].

Banyon. Based on the Initial Service and the Supplemental Service, the Court finds that all appropriate and affected parties were put on notice of the BSSS Motion, the hearing thereon and the proposed bar order.

Simultaneously with the filing of the Allocation Motion, the Trustee filed his Expedited Ex-Parte Motion To Shorten Time to Provide Notice of Hearing on Motion To Approve Settlement with Razorback, and to Approve the Form and Sufficiency of Notice [D.E. 1205] ("Notice Motion"). By separate order [D.E. 1212] (the "Notice Order"), the Court granted the Notice Motion. The Notice Order required that the Trustee serve the Notice Order and the Allocation Motion on: (1) any party that has filed a notice of appearance in the main case; (2) any party scheduled as a creditor with an allowed claim; or (3) any party that has filed a proof of claim in this case. The Court finds that the Trustee has done so, see Certificate of Service [D.E. 1225 as amended by D.E. 1237], and that such notice was sufficient to reach all parties interested in the Allocation Motion.

In sum, the Court finds that notice of both the BSSS Motion and the Allocation Motion and the hearings thereon was appropriate. All interested parties have been served and have had the opportunity to present their arguments in favor of or against both the BSSS Motion and the Allocation Motion.

## F. The Evidentiary Hearing

The Court heard testimony from Trustee Stettin,[9] Scott Newman, Esq. as counsel for Lexington, and Emery Sheer as a principal of BSSS, as well as expert testimony from Richard Pollack and Joel Glick, the Trustee's forensic accountants.[10] No objecting party presented any

---

[9] The Trustee presented his direct testimony by proffer, without objection. This testimony was received into evidence by the Court. Mr. Stettin, was then made available for cross examination by any interested party. Several parties did cross-examine Mr. Stettin.

[10] The Court finds the testimony of the Trustee to be convincing, truthful and supportive of the BSSS Settlement and the Allocation Motion. Additionally, the Court finds the expert testimony of Richard Pollack and Joel Glick to

independent evidence regarding the BSSS Motion or the Allocation Motion. Following the extensive evidentiary hearing, there is no serious contention that the $10 million settlement is not in the best interest of the estate—rather, certain creditors object to the $5 million "allocation" to Razorback and to the Bar Order in connection with the BSSS Settlement.

Evidence presented at the hearing shows: (1) the BSSS Settlement provide the estate with a substantial and certain recovery; (2) the estate cannot recover in excess of $10 million; (3) the BSSS Settlement will obviate a protracted and complex litigation; (4) the creditors overwhelmingly support the BSSS Settlement and would receive a benefit from the BSSS Settlement; (5) all claims pending against BSSS with respect to RRA are interrelated to the Trustee's claims here; and (6) the Bar Order is necessary to the BSSS Settlement.

1.      The BSSS Settlement provides the Estate with a substantial and certain recovery.

While "the Trustee believes his Complaint sets forth sound claims," BSSS believes it has sound defenses, including the defense of *in pari delicto* in the adversary, Case No. 10-03485-RBR. Transcript at 80:6-14; *see also* [Case No. 10-03485-RBR, D.E. 7]. The Trustee has testified that he believes that *in pari delicto* "would be overcome in this case," while recognizing the possibility that it would not. *Id.* 80:15-19. The Trustee further testified that, with respect to the Razorback Objection, "the Razorback Settlement definitively resolves the Razorback Investors' Objections to the Berenfeld Settlement" and "[i]n the absence of a resolution among the Trustee and the Razorback Investors, there is a risk the estate would recover less than what it will retain if the Razorback Settlement is approved. The $5 million allocated to Razorback . . . is a fair and reasonable resolution that is well within the range of reasonableness, and the $5 million claim reduction for the Razorback Investors against the Debtor's estate protects non-

be truthful and correct. The Court also finds that Scott Newman, counsel for Lexington, was forthright and his testimony supports the BSSS Settlement. Finally, the Court believes that Emery Sheer was candid with the Court and accepts his testimony.

Razorback clients too." *Id.* at 81:6-16; *see also id.* at 96:16-19 (Herbert Stettin: "I don't think so. I think it would cost less [than $ 5 million to litigate the allocation issue with Razorback], but you are eliminating entirely any consideration of what if I lose, and my lawyers wouldn't give me a guarantee."). Moreover, the evidence shows that any lawsuit against BSSS would require the expenditure of substantial estate resources. Transcript 83:9-83:20. And any judgment against BSSS likely would have resulted in appellate review. Transcript 83:9- 83:20.

    2.   <u>Even if the Trustee were to succeed, the Estate cannot recover in excess of $10 million.</u>

It is undisputed that there are no assets beyond the Lexington insurance policy that are available to the Trustee were he to prevail against BSSS at trial. The assets of BSSS are encumbered by a first lien in favor of its working capital lender; in addition BSSS owes its landlords a substantial sum. Transcript 61:4-6. Mr. Pollack, the Trustee, and Mr. Sheer all testified credibly that BSSS will not have anything to distribute to its general unsecured creditors or to its shareholders. *See Id.* at 60:22–62:6 (expert forensic accountant testifying that in his opinion BSSS will have "no funds available for distribution to unsecured creditors after payments of the bank loans and their landlords"); 82:9-83:8 (Trustee testifying via proffer that other than the Lexington policy, BSSS has no assets that are not already encumbered and that the Trustee has "no legitimate financial incentive for the continued litigation of this matter"); 164:3-8 (Mr. Sheer testifying that BSSS has no other insurance that would cover these claims). Moreover, there are two unrelated suits pending against BSSS that also fall within the same policy of insurance. One of these cases which seeks damages in excess of $13 million, and if successful, will consume the entire Lexington policy leaving the estate and all creditors without any ability to recover any funds. *Id.* at 136:3-138:7 (Mr. Newman testifying that this claimant has made a demand on Lexington for tender of the policy limits).

9

3.    The BSSS Settlement will obviate a protracted and complex litigation.

Litigating the merits of the underlying causes of action in the Trustee's case against BSSS or the dispute between Razorback and the Trustee concerning the allocation of funds would have been complex, protracted and expensive. *See id.* at 80:6–81:25, 83:9-84:8 (Trustee testifying that litigating these disputes would "lead to protracted and costly proceedings that would be harmful to the estate and the bankruptcy process," and the result would be unpredictable). The BSSS litigation by its nature would have been document and expert intensive. *Id.* at 83:11-13. Therefore, absent the approval of the BSSS Settlement, including the issuance of the Bar Order, the estate would be involved in protracted litigation with BSSS and at the same time would be involved in complex and acrimonious litigation with Razorback.

4.    The creditors overwhelmingly support the BSSS Settlement.

The creditors of the estate have overwhelmingly spoken to their support for both Settlements. The Official Committee of Unsecured Creditors (the "Committee") in this case supports the Settlements.[11]  *Id.* at 223:2-17. Representatives of Banyon, George Levin, and Gayla Sue Levin, all of whom are subject of involuntary bankruptcy cases described below, through their respective counsel, also voiced their support for both settlements. *Id.* 196:19-23. This comports with and substantiates with the Trustee's testimony that the Settlements are in the best interest of the entire creditor body of the estate. *Id.* at 94:20–96:11.

Additionally, the Court finds the Funds' positions in this matter are inconsistent and contradictory. They filed proofs of claim on behalf of Banyon for their own damages, yet they claim they are not subject to the jurisdiction of the Court, even though it is clear that if Banyon receives a distribution from this estate it will, in some part, flow through to the Funds to the

---

[11] The designee of the Committee who advised the Court of the Committee position confirmed on the record that the Razorback and D3 representatives did not participate in the Committee's vote on this issue. Transcript 223: 1-17.

10

extent the Funds have allowed claims against Banyon. *Id.* at 193:21-23. Accordingly, the Court finds that the Funds, to the extent they are creditors of Banyon, will receive the benefit of the Settlements. The same conclusion is made with respect to all Banyon lenders or investors.

Contrary to the insinuations of certain objecting creditors, it is also evident that some allocation of the Settlement Proceeds to Razorback was always contemplated. Indeed, the Trustee and Razorback coordinated their actions in an attempt to ensure that the full Lexington policy limits would be paid. The record is clear that any demand made by the Trustee for the tender of the BSSS insurance policy was made jointly with Razorback. *See* Transcript at 73:9–74:20. The Trustee knew that this strategy would require an allocation or division of any proceeds recovered as a result of the BSSS Settlement. *Id.* at 107:3-14 ("I always knew that we were going to have some sharing arrangement with the Razorback claimants. Our joint demand made it absolutely clear that we would jointly be seeking the entire policy proceeds . . . . They [Razorback] objected because there hadn't been an understanding reached between us yet concerning – at that point concerning how the funds would be divided, and it was the subject of some pretty spirited negotiations in person and on the phone"). In the Trustee's best business judgment, the Allocation Motion is the most efficient and certain method to resolve the dispute with Razorback. *Id.* at 107:15-21 ("We eventually came to the position where I made the business judgment that how much would it cost me to litigate the issues? What was the likely outcome of the litigation . . . . As a result of that, I made the business judgment that it was worth it[to settle in accordance with Allocation Motion]").

Based on the foregoing, the Court finds that the Trustee's business judgment is sound. The Court will not second guess the Trustee's well reasoned judgment that the BSSS Settlement and Allocation Motion are fair and equitable to all parties and in the best interests of the estate. Moreover, the Court agrees with the Trustee's view that while the estate may have prevailed in

the BSSS litigation and any litigation with Razorback, there is a certain amount of uncertainty in all litigation. Had the Trustee litigated against Razorback over the allocation of the Settlement Payment, there is a possibility that the Trustee would have recovered less than the $5 million being retained by the estate. The Razorback litigation would have been acrimonious and would ultimately have cost the estate a substantial sum to recover an undetermined amount. Therefore, the evidence overwhelmingly supports the approval of both the BSSS Motion and the Allocation Motion as being in the best interests of the estate, its creditors, and all interested parties.

     5.     <u>All claims pending against BSSS with respect to RRA are interrelated to the Trustee's claims against BSSS in the adversary.</u>

From the evidence received by the Court, it is clear that all of the liability of BSSS emanates from its provision of accounting services to RRA and the BSSS audit of Banyon 1030-32. The crux of all claims asserted against BSSS to date relating to RRA and Rothstein is derivative of this work performed by BSSS. The Complaint in the BSSS adversary, Case No. 10-03485-RBR, invokes both the Banyon audit and the provision of accounting services to RRA as critical to BSSS's alleged negligence and wrongdoing. Specifically, the Complaint alleges:

> While knowing of Rothstein's actions and observing his financially damaging effects upon RRA, BSSS was simultaneously conducting an audit of Banyon. . . . [A]s BSSS was auditing Banyon, it was concurrently preparing tax returns for RRA, delivering accounting services to RRA and providing tax advice to Rothstein. While doing so, BSSS ignored numerous red flags, entranced by the allure of Rothstein's money and personality and the profits it realized from the relationship.

*Trustee Exhibit* 31 at ¶ 36.

The Funds' filed a Complaint against BSSS, Weintraub, Berkowitz, and Leitstein, in the Southern District of Florida one day before the hearing on the BSSS Motion.[12] The Complaint alleges counts for negligent misrepresentation and civil conspiracy against BSSS and the three

---

[12] The Court admitted the Funds' Complaint into evidence as Exhibit 32.

individuals. In support, The Funds' Complaint relies heavily on the allegations made in the Trustee's complaint and similarly frames its allegations against BSSS as "arising out of the Rothstein Ponzi scheme" and premised on BSSS's alleged assistance in Rothstein's falsification of [RRA's and Banyon's] financials." *See* Notice of Filing [D.E. 1250]. This is consistent with the Trustee's testimony that "[t]his dispute concerns the propriety of Berenfeld's accounting services provided to RRA and Scott W. Rothstein, individually, as well as Berenfeld's audit of" Banyon." Transcript, at 69:19-23. The Trustee further testified that "[e]ach of the claims that will be barred relate directly to Berenfeld's audit of Banyon and its preparation of financial statements for RRA." *Id.* at 78:14-16. Accordingly, the Court finds that all of the alleged or potential claims that any party may have against BSSS resulting from its involvement with the Rothstein Ponzi scheme and Banyon are interrelated to the claims of the Trustee against BSSS because all barred claims arise out of and depend upon the same facts and the BSSS relationship with RRA.

6.   The Bar Order is necessary to the BSSS Settlement.

The evidence is unrebutted that absent the issuance of a Bar Order, BSSS and Lexington would not have agreed to enter into the BSSS Settlement. *Id.* at 144:18-20 (testimony of Mr. Newman, "Q: Were a bar order and a release conditions to Lexington's agreement? A: Absolutely"). Mr. Newman testified that Lexington required the Bar Order because it was in its insured's best interest. *Id.* at 144:11-17 ("As part of the carrier's fiduciary obligation to its client, its insured, its good faith obligation, it wanted to discharge as much of the liabilities as it could, and so payment of the $10 million in exchange for a bar order and a release was the appropriate thing to do under the circumstances"). Mr. Sheer, a principal of BSSS testified that absent the bar order he would not have agreed to the BSSS Settlement and he would have continued litigating. *Id.* at 164:9-12 ("Q: Would Berenfeld have agreed to enter into the

settlement offer if part of it was not the issuance of a bar order? A: No, it would not").

## II. CONCLUSIONS OF LAW

The legal issues before the Court fall into two categories: (A) whether the BSSS Settlement and the Allocation Motion meet the requirements for approval of settlements under Fed. R. Bankr. P. 9019; and (B), whether the Court can and should approve the Bar Order requested as part of the BSSS Motion.

For the reasons set forth below, the Court finds that the BSSS Settlement and the Allocation Motion meet the requirements for approval under Fed. R. Bankr. P. 9019 and that the proposed Bar Order is necessary and integral to the BSSS Settlement and appropriate on the record before the Court in these proceedings.

## A. The BSSS Motion and Allocation Motion Meet the *Justice Oaks*[13] Requirements

The standard for judicial approval of settlements pursuant to Fed. R. Bankr. P. 9019 is well settled in the Eleventh Circuit. In passing on proposed settlements, the Court must determine whether a proposed settlement is fair and equitable. *In re Chira*, 367 B.R. 888, 896 (Bankr. S.D. Fla. 2007). The Court must evaluate whether the compromise falls below the "lowest point in the range of reasonableness." *In re S&I Investments*, 421 B.R. 569, 583 (Bankr. S.D. Fla. 2009); *In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993); *In re Arrow Air, Inc.*, 85 B.R 886, 890 (Bankr. S.D. Fla. 1988). The decision to approve a settlement "is within the sound discretion of the court." *In re Rothstein Rosenfeldt Adler P.A.*, 2010 Bankr. LEXIS 3001, at *14 (Bankr. S.D. Fla. Sept. 16, 2010) (collecting cases).

In making this determination, the Court is required to examine the following four factors enumerated by the Eleventh Circuit in *Justice Oaks*: (a) the probability of success in litigation;

---

[13] *In re Justice Oaks II, Ltd.*, 898 F.2d. 1544, 1549 (11th Cir.1990) ("*Justice Oaks*").

(b) the difficulties, if any, to be encountered as a matter of collection; (c) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

The Court has examined the factors espoused in *Justice Oaks*, and finds that the BSSS Motion and Allocation Motion meet the standards for approval set forth by the Eleventh Circuit and, therefore, approval of the BSSS Settlement is proper pursuant to Federal Rule of Bankruptcy Procedure 9019. The Court specifically finds that the Settlements (i) are fair and reasonable, (ii) fall within the reasonable range of possible litigation outcomes, and (iii) are in the best interests of the estate because settlement (a) precludes any risks associated with litigation and collection in this matter, and (b) increases the dividend available to creditors. In making this determination, the Court has expressly considered (i) the probability of success in the litigation, (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconveniences and delay necessarily attending it, and (iv) the paramount interest of the creditors and proper deference to their reasonable views in the premises.

To the extent any of the objecting parties are either creditors of the RRA estate or Banyon, they will receive the benefits of the BSSS Settlement and Allocation Motion. All creditors of the RRA estate will share in the $5 million that the estate will receive, either as direct claimants in the RRA case or as claimants through Banyon. Transcript 193:21- 193:23; *See also In re Rothstein Rosenfeldt Adler*, 2010 Bankr. LEXIS 3001 at * 21-22 (Bankr. S.D. Fla. Sept. 16, 2010) (finding that "To the extent that claims filed by the Banyon Entities are allowed in the Debtor's estate, by settlement or through litigation, the Banyon Noteholders will receive a benefit as a result of the entry of a bar order."). Nothing has been presented to contradict this

15

evidence. In fact, the evidence before the Court is simple. The creditors of the RRA estate have overwhelmingly spoken to their support for the BSSS Settlement. The Trustee has testified that it is his business judgment that the BSSS Settlement is in the best interest of the estate. Additionally, the disinterested members of the Committee support both Motions. The Banyon entities also consent to the Settlement. Accordingly, the Court finds that it is overwhelmingly in the best interests of the creditors of this estate to approve the BSSS Settlement and the Allocation Motion.

Furthermore, parties opposing the Allocation Motion have presented no evidence as to how their interests are being harmed. While FEP's lawyer argued that FEP may have independent claims against BSSS and therefore deserves the same treatment as Razorback, there was no evidence that FEP has any such claims—in fact, to date, there is nothing in the record before this Court that FEP has even filed suit against BSSS or put BSSS on notice of its claims. Transcript 165:17- 165:22. Likewise, Circle K did not present any evidence as to the why the proposed allocation is unreasonable. Circle K did not even contend that it has claims against BSSS, nor does its position recognize that in this case the Trustee and Razorback executed a coordinated strategy to extract the full amount of the Lexington policy. *See* Transcript 73:23. Therefore, the objecting parties have provided no evidentiary basis for this Court to disregard the Trustee's testimony and business judgment.

## B. The Court has Jurisdiction to Enter the Bar Order[14]

Federal law is clear that the Court has an independent obligation to review its own subject matter jurisdiction. *See Grupo Dataflux v. Atlas Global Gp., L.P.,* 541 U.S. 567, 593 (2004) (noting that "district courts have an independent obligation to address subject-matter jurisdiction *sua sponte*"). The Eleventh Circuit, in *Lemco Gypsum*, made clear that a bankruptcy court has jurisdiction over any civil proceeding under 28 U.S.C. § 1334(b) if the "outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property." *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 788 (11th Cir. 1990). The Eleventh Circuit further explained that an "action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.*

Under similar circumstances, Judge Isicoff in *In re Solar Cosmetic Labs* approved a bar order over a jurisdictional objection. *In re Solar Cosmetics Labs,* 201 Bankr. LEXIS 3309, at *2 (Bankr. S.D. Fla. Aug. 27, 2010). There, the court was asked to approve a settlement between the trustee and the directors and officers of the debtor along with their insurers. There was a limited objection by a party who would be subject to the bar order in that case. *Id* at *5. The main concern of the objecting party was the preservation of its independent rights against the insurers. *Id* at *7. Among the objections made was that the court lacked jurisdiction over the

---

[14] All of the Court's findings and conclusions relating to the appropriateness of the Bar Order requested herein, and the Court's jurisdiction to enter same, relate exclusively to the requested Bar Order before it in connection with the resolution of the BSSS Motion and the Allocation Motion. As discussed *infra*, the Court concludes that the particular Bar Order before it is appropriate as being fair and equitable under binding Eleventh Circuit precedent and under the particular circumstances of the instant settlement. The Court does not make any generalized determinations concerning the permissible boundaries of bar orders, and does not opine on the appropriateness of any bar order not presently before it. The Court also notes that, under the express terms of the Trustee's settlement with Razorback, which is being approved herein, Razorback has reserved all rights to object to any future bar orders that may be proposed in this case. Likewise, the Committee's support for the instant Bar Order is without prejudice to its right to review and object to future bar orders.

independent dispute between the objecting party and the insurer. *Id* at *10. In dispensing with that objection, Judge Isicoff stated "As far as any suggestion made by [the objecting party] that this Court does not have jurisdiction or authority over any alleged disputes between [the objecting party] and [the insurers], one need go no further than *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784 (11th Cir. 1990), for confirmation of this Court's jurisdiction." *Id.* at *10.

In the present case, the Trustee proffered that entry of the Bar Order is an essential and critical element of the Settlement, the willingness of BSSS to settle, and the willingness of Lexington to pay the $10 million policy limit to the Trustee. Evid. Hr'g Tr. 51:4-8. Although there is some dispute amongst the courts of this district whether a bar order must be a condition precedent to an agreement, the Court need not resolve this issue in this case because the evidence shows that the Bar Order is necessary and integral to the BSSS Settlement and that without it there would be no settlement. *Compare In re S& I Investments* 421 B.R. at 585 ("it is not a requirement for the entry of a bar order that such an order be included as a condition precedent in the settlement agreement.") *with In re Sentinel Funds*, 380 B.R. 902, 905 (Bankr. S.D. Fla. 2008) (noting that bar orders "are generally justifiable only where the bar order is integral to the settlement."). The Settlement expressly provides that the Settlement Payment shall not be made to the Trustee until both the approval of the BSSS Settlement and the bar order are final and non-appealable. The Trustee's proffered testimony also indicated that, without the bar order, Lexington would not have entered into the Settlement. *Id.* at 51:9-20. Thus, the undisputed evidence before the Court shows that without a Bar Order there will be no settlement.

Moreover, the evidence is equally clear that there is only the limited insurance fund available of $10 million to satisfy all claims. It is undisputed that there are no assets beyond the Lexington insurance policy that are available to the Trustee were he to prevail against BSSS at

18

trial. The assets of BSSS are encumbered by a first lien in favor of its working capital lender. In addition, BSSS owes its landlords a substantial sum. Transcript 61:4-6. Mr. Pollack, the Trustee, and Mr. Sheer all testified credibly that BSSS will not have anything to distribute to its general unsecured creditors or to its shareholders. Therefore, the insurance coverage available is inadequate to pay all of the claims against BSSS. *Id.*

Finally, the evidence adduced at the hearing shows that all of the claims asserted against BSSS that are subject to the Bar Order are interrelated to the claims of the Trustee against BSSS. From the evidence received by the Court, it is clear that all of the liability of BSSS emanates from its provision of accounting services to RRA and the BSSS audit of Banyon 1030-32. The crux of all claims asserted against BSSS to date relating to RRA and Rothstein is derivative of this work performed by BSSS. The Complaint in this case invokes both the Banyon audit and the provision of accounting services to RRA as critical to BSSS's alleged negligence and wrongdoing. As discussed *supra*, The Funds' Complaint, relies heavily on the allegations made in the Trustee's Complaint against BSSS and similarly frames its allegations against BSSS as "arising out of the Rothstein Ponzi scheme" and premised on BSSS's alleged assistance in Rothstein's falsification of [RRA's and Banyon's] financials." [D.E. 1250]. This is consistent with the Trustee's testimony that "[t]his dispute concerns the propriety of Berenfeld's accounting services provided to RRA and Scott W. Rothstein, individually, as well as Berenfeld's audit of Banyon." Transcript, at 69:19-23. The Trustee further testified that "[e]ach of the claims that will be barred relate directly to Berenfeld's audit of Banyon and its preparation of financial statements for RRA." *Id.* at 78:14-16. Accordingly, the claims which are subject to the Bar Order are properly subject to the jurisdiction of this Court, because they affect and are interrelated to the claims of the estate against BSSS.

Based on the foregoing analysis and the records before the Court in these contested

matters, the Court concludes that it has jurisdiction to enter the Bar Order.

## C. The Bar Order Is Fair And Equitable.

In accordance with the Eleventh Circuit's decision in *Munford Inc. v. Munford, Inc. (In re Munford)*, 97 F.3d 449 (11th Cir. 1996), this Court has applied a four part test to determine whether the entry of a bar order is appropriate. In order to enter a bar order the Court "must make a reasoned determination that the bar order is fair and equitable." *In re S&I Invs.*, 421 B.R. 569, 585 (Bankr. S.D. Fla. 2009). In making the determinations of fairness and equity, courts consider: (i) the interrelatedness of the claims that the bar order precludes; (ii) the likelihood of barred parties to prevail on the barred claim; (iii) the complexity of the litigation; and (iv) the likelihood of depletion of the resources of the settling parties. *See In re Munford, Inc.* 97 F.3d at 455; *accord In re S&I Investments*, 421 B.R. at 585.

The Court finds that the Trustee has met the first requirement. The evidence adduced at the hearing makes clear that all of the claims that are subject to the Bar Order are interrelated with the Trustee's claims. Indeed, the Court noted that the crux of all of the claims asserted against BSSS to date relate to RRA, Rothstein and Banyon and stem from the relationship between BSSS and RRA. *See* Transcript 112:13-17. Based on the entire record before the Court, the Court finds that the first factor weighs in favor of entry of the Bar Order.

The second factor also weighs in favor of entry of the Bar Order. None of the objecting parties presented any evidence regarding the viability of their claims, other than the Funds. It is not the Trustee's burden to prove the weaknesses of the objecting parties claims; rather, it is incumbent on the objecting party to present evidence of the strength and existence of its claims. *See In re Solar Cosmetic Lab Inc.*, 2010 Bankr. LEXIS 3309, at *10 (finding that the court did not need to reach the merits of any claim of the objecting party because the objecting party "has provided no plausible basis to suggest that any such claim exists.").

20

In assessing the Funds Complaint for purposes of this matter only, the evidence introduced at the hearing suggests that the Funds did not rely upon any audit issued by BSSS. This is because they relied upon their own independent investigation of RRA and Rothstein prior to making their loans or investments, much of which predated the BSSS audit, as well as the purported verification of their agent, Michael Szafranski. *See* Trustee's Exhibit 28;[15] Trustee's Exhibits 25, 26, 28.[16] Accordingly, the Court finds that for purposes of this matter only, the Funds' investment into the Ponzi scheme, after receiving the Kroll Report is likely to be a serious flaw in the Funds' claims against BSSS. Based on the foregoing the Court finds that the second prong militates in favor of entering the Bar Order.

Further both the Trustee and Razorback have argued that the Funds are, in all probability, a source of recovery and not an innocent third party whose claims are being barred. The testimony of the Trustee's forensic accountant, Joel Glick, who participated in the preparation of the Trustee's avoidance complaint against the Funds in Case No. 10-03802-RBR, establishes that the Funds ceased funding under five (5) year commitments in less than one (1) year, and with respect to Level 3 after a mere a several months.[17] *See* Transcript 184:21-185:18. Platinum's stated rate of return was 50%. *Id* at 184:19-20. The Trustee has alleged in his complaint against the Funds that the Funds received approximately $98 million after their last event of funding. Glick also testified that he prepared the summaries reflecting these payments. Transcript 182:20-

---

[15] The Trustee cited to several portions in the Kroll Report, which is dated June 23, 2008, that demonstrate the Funds were aware that serious doubt existed regarding the viability of the structured settlements subject of Rothstein's Ponzi scheme. The Kroll Report at page 66 states that "sources in South Florida legal community told Kroll that they do not believe that Rothstein's firm could have amassed 100 million in settlements, based on their knowledge of cases in the courthouse, their own familiarity with South Florida litigation, and legal community gossip."

[16] The Funds lawsuit against Kroll (Trustee's Exhibit 28) filed in New York State Court alleges at paragraphs 26, 27 and 88-90 that the Funds were relying upon the Kroll Report.

[17] Glick also testified that the Funds received repayment from RRA, through the Banyon Funding Entities, of approximately $423 million. Transcript 187:12-17. The transfers made from RRA to the Funds were deposited in segregated accounts belonging to the Banyon Funding Entities but controlled by the Funds. Transcript 183:12-184:11. The Funds were provided an opportunity to cross examine Glick and to offer rebuttal testimony or exhibits, but declined to do so.

183:11.

The third factor also weighs in favor of granting the Bar Order. The litigation against BSSS by any party asserting claims of malpractice for its role in the Ponzi scheme perpetrated by Rothstein is complex. The merits of the underlying causes of action in the Trustee's case against BSSS and/or the dispute between Razorback and the Trustee concerning the allocation of funds would have been complex, protracted and expensive. *See Transcript* at 80:6–81:25, 83:9-84:8. The BSSS litigation by its nature would have been document and expert intensive. *Id.* at 83:11-13. The Court finds that absent the approval of the BSSS Settlement, including the issuance of the Bar Order, the RRA estate would be involved in protracted litigation with BSSS and at the same time would be involved in complex and acrimonious litigation with Razorback. Accordingly this factor weighs in favor of entering the Bar Order.

The last prong also weighs in favor of entry of the Bar Order. The record is replete with uncontroverted testimony that the only BSSS asset available for any claimant is the Lexington insurance policy proceeds. If the Court does not enter the Bar Order and all parties litigate their claims against BSSS, then the first plaintiff to obtain a judgment could receive the entire $10 million, leaving no recovery for any other claimant. If the distribution passes through the estate, it will reach either directly, or indirectly through Banyon, all of the parties affected.

Accordingly, the Court finds that the Trustee has met all four prongs as required for this Court to find that the Bar Order is fair and reasonable.

1. The Funds Objection

The Funds' Objection, as clarified at the hearing, is solely an objection to the Bar Order. Transcript 202:3-12. They make two overlapping arguments: first, that they hold independent claims,; and second, that the case law precludes the Court from entering the Bar Order under the circumstances presented here. Both of these arguments are unpersuasive.

For purposes of this matter only, the Court has already assessed the validity of any potential independent claim that the Funds allege. The Funds second argument is that based on four Eleventh Circuit cases, the court's power to issue a Bar Order is limited to indemnity claims, contribution claims and other claims based on the liability of the non-settling defendants to the plaintiff. The Funds seek support for their objection in *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305 (11th Cir. 2004) and *In re HealthSouth Corp. Sec. Lit.*, 572 F.3d 854 (11th Cir. 2009). The Funds argue that these cases establish a *per se* rule in the Eleventh Circuit that the scope of bar orders is necessarily limited to the "trinity" of indemnity claims, contribution claims, and other claims based on the liability of the non-settling defendant to the plaintiff. However, these cases, both of which were securities class action cases subject to the Private Securities Litigation Reform Act ("PSLRA"), do not establish such a *per se* rule.

In *AAL High Yield*, the court reversed a bar order where "the district court made no findings of fact, and expressed no rationale or authority for barring claims without a settlement credit or 'set off,' or for barring claims that arise from causes of action brought by plaintiffs other than the instant plaintiffs or truly independent claims." 361 F.3d at 1312. Likewise, the specific issue decided in *HealthSouth* was whether the statutory language of the PSLRA, which explicitly contemplates bar orders in respect of certain claims, would preclude the entry of a bar order affecting claims not specifically enumerated in the PSLRA. 572 F.3d at 860. After deciding that the PSLRA did not necessarily preclude a bar order from barring non-enumerated indemnification claims, the court then decided that a contractual attorney fee claim and other indemnification claims could be barred under a bar order emanating from a PSLRA case.

In accordance with the mandate of *Munford*, this Court has made a "reasoned determination" that the proposed Bar Order before it, under the facts and circumstances of this case and these proposed settlements, is "fair and equitable." Accordingly, the Court rejects the

23

Funds' arguments that the Eleventh Circuit cases they cite preclude the Court's issuance of the requested Bar Order on the facts before the Court here. In accordance with *Munford*, *Lemco Gypsum* and their progeny, the Court overrules the Funds Objection.

2. FEP Objection

The FEP Objection and FEP Supplemental Objection have three components. First, FEP objects to the Bar Order on the procedural ground that an adversary proceeding against any party affected by the Bar Order is required under Fed. R. Bankr. P. 7001(7). Second, FEP raises the same issues to the Bar Order, citing the same cases, as the Funds. Third, FEP objects to the Allocation Motion because it allegedly treats like creditors differently. These arguments are unpersuasive.

It is undisputed law of the Eleventh Circuit that, in connection with the approval of a settlement under Fed. R. Bankr. P. 9019, a bankruptcy court may enter an appropriate bar order. *See In re Munford*, 97 F.3d at 454 (finding that a bankruptcy court had authority under section 105(a) to enter order barring claims against certain defendants); *In re Rothstein Rosenfeldt Adler P.A.*, 2010 Bankr. LEXIS 3001, at *17 ("This Court has the inherent power under the Bankruptcy Code, including section 105(a), to issue any order necessary or appropriate to carry out the provisions of Title 11."); *In re Solar Cosmetics Labs, Inc.,* 2010 Bankr. LEXIS 3309 (entering bar order as part of Rule 9019 motion to approve compromise); *In re First NLC Fin. Serv., LLC*, 2009 Bankr. LEXIS 1083 (Bankr. S.D. Fla. Mar. 12, 2009) (entering bar order as part of Rule 9019 motion to approve compromise).

The cases cited by FEP in support of the proposition that an adversary proceeding under Fed. R. Bankr. P. 7001(7) is required without exception, are inapposite to FEP's position. In *In re Southern Institute & Evaluation*, 217 B.R. 962 (Bankr. S.D. Fla. 1998), the court was faced with a motion for contempt stemming from an alleged violation of the automatic stay of 11

24

U.S.C. § 362(a). At the hearing, the debtor made an *ore tenus* request for injunctive relief from a creditor to withhold 100% of payments relating to post-petition Medicare claims. The court denied this relief because it sought an injunction without the filing of an adversary proceeding. Notably, the case does not involve a bar order or a Rule 9019 motion. Nothing about the *Southern Institute* case is factually similar to the Motions pending before the Court relating to the BSSS Motion.

The next case cited by FEP, *In re Goldberg*, 221 B.R. 907 (Bankr. M.D. Fla. 1998), is also of little help to its position. In that case, the debtor resisted stay relief sought by a creditor who had pending claims against the debtor and non-debtor defendants. The debtor also complained that the court refused to extend the automatic stay to the non-debtor defendants. The court disagreed with the debtor and ruled that opposition to a stay relief motion is an inappropriate vehicle to provide the injunctive relief needed to extend the automatic stay to non-debtors. The court further noted that such relief may be obtained under the right circumstances pursuant to an adversary proceeding under Fed. R. Bankr. P. 7001(7). Again, this case does not involve a motion under Rule 9019 or a bar order. And in *In re Holland*, 70 B.R. 409 (Bankr. S.D. Fla. 1987), the bankruptcy court specifically noted that it is not necessary to file an adversary proceeding to enforce an approved settlement. *Id* at 411.

None of the cases cited by FEP contradicts the long-standing precedent of the Eleventh Circuit in *In re Munford*, 97 F.3d at 449 and its progeny, which have approved bar orders as part of motions to approve a settlement brought pursuant to Fed. R. Bankr. P. 9019. Accordingly, the Court finds that an adversary proceeding is not required to enter the Bar Order as part of the 9019 settlement approval process.

In respect of FEP's objection that the cases cited by it and the Funds prevent the Court from entering the Bar Order or otherwise approving the BSSS Settlement, the Court disagrees.

25

The extensive forgoing analysis reveals that the BSSS Settlement meets the *Justice Oaks* and *Munford* requirements. Moreover, the cases cited by FEP and Funds either support the entry of the Bar Order (*U.S. Oil & Gas, Munford*) or are inapplicable (*AAL High Yield and HealthSouth*). Accordingly, this contention is also without merit.

Finally, FEP objects to the Allocation Motion on the ground that it unfairly treats like creditors differently. The FEP Objection and Supplemental Objection cite no cases that would prevent this Court from approving the settlement of the allocation issue between the Trustee and Razorback. The evidence establishes that the Trustee and Razorback always intended to a division of the proceeds of any recovery from BSSS and Lexington that was obtained as part of the joint demand and coordinated strategy. The proposed resolution, coupled with the reduction in Razorback's claim, provides the estate and the non-Razorback creditors with significant benefits. These include $5 million coming into the Estate, a reduction in administrative expenses and a $5 million reduction in the size of Razorback's claims. This Settlement is above the lowest point in the range of reasonableness.

Based on the foregoing analysis the Court will overrule the FEP Objection and Supplemental Objection in their entirety.

3. Circle K Objection

Circle K's Objection, as pled, only challenged the fairness of the Allocation Motion. Circle K argues in its pleading that the entire $10 million should come into the estate and be distributed *pro rata*. At the hearing, Circle K expanded the scope of its objection to include all of the matters set for hearing. Transcript 212:12-16.

The Court has considered Circle K's substantive arguments and finds that Circle K's objections to the Bar Order and BSSS Settlement are without merit. The Allocation Motion certainly reflects a settlement that is above the lowest point in the range of reasonableness. The

Trustee and Razorback each made demands for the policy limits on BSSS and its insurer, the insurer agreed to pay the policy limits to the Trustee and Razorback jointly, and the settlement agreement required an allocation of the settlement proceeds among the claims of Razorback and the Trustee. No evidence has been presented that the resolution proposed by the Allocation Motion is beyond the lowest point in the range of reasonableness, and the Court finds that it is a fair and appropriate resolution of the potential claims to the settlement proceeds. The Court defers to the business judgment of the Trustee. Accordingly, for the foregoing reasons the Court overrules Circle K's objection.

### 4. UST Objection

The Office of the United States Trustee objects to the Settlement because of the possible effects of the Bar Order on the pending involuntary bankruptcy proceedings of Banyon 1030-32, George Levin and Gayla Sue Levin (collectively, the "Banyon Alleged Debtors"). *See In re alleged debtor Banyon 1030-32 LLC*, 10-33691-RBR; *In re alleged debtor George Levin*, 10-33696-RBR; *In re alleged debtor Gayla Sue Levin*, 10-27946-RBR. The UST summarizes its objection by stating "the Bar Order contained in the [BSSS] agreement may have the effect of curtailing potential third party actions against [BSSS and Lexington] without conferring any benefit on these hypothetical third parties or those other bankruptcy estates which are directly impacted by the proposed settlement and which their own creditors and standing." [D.E. 1239 at 4]. However, there is no evidence before the Court regarding what harm if any may befall any "hypothetical third parties." There is clear evidence before the Court of the real harm and effect on this estate if the Court does *not* approve the Settlement. The Court has reviewed the dockets of the Banyon Alleged Debtor cases and no order for relief has been entered in any of them, and no trustee has been appointed in any of them. Accordingly, it is clear that at the time of the hearing on the Motions, the Banyon Alleged Debtors are entitled to dispose of any of their

claims as they see fit, including agreeing to the effect of the Bar Order on any claims that they may have.

### III. CONCLUSION

Based on the foregoing it is

**ORDERED** that the Court will

(1) **GRANT** the relief sought by the Trustee in the Trustee's Motion to Approve Settlement with Berenfeld Spritzer Schecter & Sheer and for Entry of Bar Order [D.E. 1123] and Trustee's Motion to Approve Settlement with Razorback Plaintiffs to Resolve the Razorback Plaintiffs' Objection [D.E. 1204]; and

(2) **OVERRULE** the Objections filed by Razorback Funding, LLC [D.E. 1147], Philip Arvidson [D.E. 1152], the FEP Victims Group [D.E. 1183, 1244], Greenwood Capital Partners, LLC and LMB Funding Group [D.E. 1187], the United States Trustee [D.E. 1239], Platinum Partners Value Arbitrage Fund LP, Structured Growth LLC and Level 3 Capital Management LP [D.E. 1240], and Circle K Family, LLC, et al. [D.E. 1238].

(3) By a separate order, the Court will enter a Bar Order.

####

Copies to:

Charles H. Lichtman, Esq.
Paul Steven Singerman, Esq.
Isaac M. Marcushamer, Esq.
*(Counsel to the Trustee shall serve this order on all interested parties and file a certificate of service within 3 days of entry of this Order).*

28

# EXHIBIT B

ORDERED in the Southern District of Florida on _____01-10-11_____.



_Raymond B. Ray_

Raymond B. Ray, Judge
United States Bankruptcy Court

RECEIVED
Bilzin Sumberg
By gportes at 11:27 am, Jan 11, 2011
DOCKETED

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

IN RE:                                    CASE NO.: 09-34791-RBR

ROTHSTEIN ROSENFELDT ADLER, P.A.,        CHAPTER 11

     Debtor.

_____/

**BAR ORDER PURSUANT TO SETTLEMENT AGREEMENT BETWEEN TRUSTEE HERBERT STETTIN AND BERENFELD SPRITZER SHECHTER & SHEER, LLP**

**THIS MATTER** came before the Court upon the Trustee's Motion to Compromise Controversy with Berenfeld Spritzer Shechter & Sheer LLP ("BSSS") [D.E. 1123] (the "BSSS Motion") and the Trustee's Motion to Compromise Controversy with Razorback Plaintiffs' to Resolve the Razorback Plaintiff's Objection [D.E. 1204] (the "Allocation Motion"). By a separate Order [D.E. 1307], this Court has granted the BSSS Motion and Allocation Motion.

Based on this Court's Order Granting the BSSS Motion and Allocation Motion [D.E. 1307], it is

**ORDERED** as follows:

1. The court has approved the Settlement Agreement[1] between the Trustee and Berenfeld Spritzer Shechter & Sheer LLP in a separate order [D.E. 1307].

2. For the reasons stated on the record, which are incorporated herein by reference, the request for a Bar Order is **GRANTED** to the extent set forth below.

3. This Order shall act as an injunction against any person or entity in favor of Berenfeld Spritzer Shechter & Sheer LLP, its employees, and its partners, including, Tracy D. Weintraub, Gary Berkowitz, Brian Leitstein, and any successors and their partners, and employees (collectively, "Berenfeld") in regard to any and all matters arising out of any involvement of Berenfeld whatsoever in transactions, acts, or events in any manner related to Scott W. Rothstein ("Rothstein"), RRA, and/or Banyon 1030-32 LLC and its predecessors, affiliates, successors, and related entities (collectively, "Banyon") as follows:

   a. Against the filing, commencing, conducting, or continuing in any manner directly, indirectly, or derivatively, any suit, action, or other proceeding (including, without limitation, any proceeding in any judicial, arbitral, administrative, or other forum) against Berenfeld with regard to all matters arising out of any involvement of Berenfeld whatsoever in transactions, acts, or events in any manner related to Rothstein, RRA, and/or Banyon;

   b. Against enforcing, levying employing legal process, whether pre- or post-judgment; attaching, garnishing, sequestering (including without limitation, any prejudgment attachment, garnishment or sequestration), bringing proceedings supplementary to execution, collecting or otherwise recovering

---

[1] Unless otherwise noted, all capitalized terms herein shall have the same meaning ascribed to them in the Motion and the Settlement Agreement.

by any means or in any manner, any claims against Berenfeld with regard to all matters arising out of any involvement of Berenfeld whatsoever in transactions, acts or events in any manner related to Rothstein, RRA, and/or Banyon;

c.  Against any action brought by any person or entity seeking recovery, contribution and/or indemnity from Berenfeld with regard to all matters arising out of the Berenfeld's involvement whatsoever in transactions, acts or events in any manner related to Rothstein, RRA, and/or Banyon. Notwithstanding any of the foregoing, nothing contained in this Order shall prevent a defendant in any pending or threatened litigation in any court from claiming, to the extent applicable in such litigation, that the damages sustained by plaintiff should be subject to setoff or other reduction in accordance with applicable non-bankruptcy law. Further, entry of this Order shall be without prejudice to the right of any such plaintiff to challenge the applicability of a setoff or reduction, and to the right of any plaintiff or defendant to challenge or assert the manner of calculating any such setoff or reduction in accordance with applicable non-bankruptcy law; and

d.  Against proceeding in any manner and any place with regard to making or liquidating any claim or bringing any action of any kind or nature against Berenfeld in any forum other than the U.S. Bankruptcy Court for the Southern District of Florida.

4.  The scope of the bar order set forth in paragraph 3 above is limited to those claims against Berenfeld arising from, in connection with, and/or involvement in Rothstein,

RRA, and/or Banyon. The bar order set forth in paragraph 3 is not intended to bar third party claims against Berenfeld arising out of matters completely unrelated to Berenfeld's involvement with Rothstein, RRA, and/or Banyon.

5. Subject to paragraph 3C above, but otherwise notwithstanding anything else to the contrary contained herein or in the Settlement Agreement, neither the Court's entry of this Bar Order, the Order Approving the Settlement [ECF No.___], or the entry of an order dismissing the Adversary Proceeding shall operate as a release, discharge, or otherwise affect, diminish or impair in any way the claims, rights and remedies of any creditors, party in interest or other person or entity against any person or entity other than Berenfeld. Without limiting the foregoing, nothing in this Order, the Settlement Agreement, any order dismissing the Adversary Proceeding, or anything related to the approval or implementation of the Settlement Agreement shall affect, impair, or diminish in any way the claims, rights, remedies being asserted, or which may hereafter be asserted in any action or proceeding against any person or entity (including, without limitation, any current or future defendants or other parties in any current or future actions or proceedings), other than Berenfeld, including without limitation, in those certain cases styled (i) *Labonte et al v. Levine et al*, Case No. 10-CV-00853-MRK (D. Conn. Jun. 2, 2010); and (ii) *Razorback Funding, LLC, et al v. Rothstein et al.*, Case No. 09-062943 (Fla. 17th Cir. Ct 2009).

6. Nothing in this Order, any order dismissing the Adversary Proceeding, or any other order implementing the Settlement and Bar Order approved herein is a determination of any issue other than the reasonableness of the Settlement and Bar Order under applicable law, and the Court makes no determination of adjudication on the merits of

the claims asserted. Moreover, the Trustee's release contained in paragraph 5 of the Settlement Agreement being given to Berenfeld shall be limited solely to claims, which the Trustee has exclusive standing to prosecute on behalf of the estate.

7. Nothing in the Settlement Agreement, this Order or the approval of the Settlement Agreement shall preclude any person or entity from taking discovery from and setting depositions of Berenfeld, as otherwise allowed by applicable law.

8. The bar order set forth in paragraph 3 above shall not apply to agencies or departments of the United States of America or of any state or local governments.

9. The Court reserves jurisdiction regarding the interpretation, effectuation, and enforcement of this Order.

10. Any and all objections to the entry of the bar order have either been withdrawn or are hereby **OVERRULED**.

# # #

<u>Copies to</u>:
Paul Steven Singerman, Esq.
Isaac M. Marcushamer, Esq.
 *(Attorney Singerman or Marcushamer shall serve this order on all interested parties and file a certificate of service within 3 days of entry of this Order).*