Case No. 11-60534-MORENO

IN THE

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

IN RE ROTHSTEIN ROSENFELDT ADLER, P.A.          *Debtor.*

PLATINUM PARTNERS VALUE ARBITRAGE FUND LP., *et al.*, *Appellants,*

v.

HERBERT STETTIN, AS CHAPTER 11 TRUSTEE FOR
ROTHSTEIN ROSENFELDT ADLER, P.A., *et al.*          *Appellees.*

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-34791-RBR

**BRIEF OF APPELLANTS PLATINUM PARTNERS VALUE ARBITRAGE FUND
LP, CENTURION STRUCTURED GROWTH LLC AND
LEVEL 3 CAPITAL FUND LP**

| | |
|---|---|
| **BILZIN SUMBERG BAENA PRICE & AXELROD LLP** | **CURTIS, MALLET-PREVOST, COLT & MOSLE LLP** |
| 1450 Brickell Avenue, Suite 2300 | 101 Park Avenue |
| Miami, FL 33131 | New York, New York 10178-0061 |
| Telephone: (305) 374-7580 | Telephone:  (305) 374-7593 |
| Facsimile: (305) 375-7593 | Facsimile:  212-697-1559 |
| Scott L. Baena, Esq. | Eliot Lauer, Esq. |
| Florida Bar No. 186445 | Jacques Semmelman, Esq. |
| Jay M. Sakalo, Esq. | Gabriel Hertzberg, Esq. |
| Florida Bar No. 156310 | |
| Jeffrey I. Snyder, Esq. | |
| Florida Bar No. 21281 | |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

STATEMENT OF THE BASIS OF APPELLATE JURISDICTION ........................................... 2

STATEMENT OF THE ISSUES PRESENTED FOR APPELLATE REVIEW ........................ 2

APPLICABLE STANDARDS OF APPELLATE REVIEW .................................................... 2

STATEMENT OF THE CASE AND OF THE FACTS........................................................... 3

1.   The Parties ................................................................................................................ 3

2.   The Trustee's Adversary Proceeding Against Berenfeld .................................... 7

3.   The Settlement Motions & Objections ................................................................. 7

4.   The Funds File an Objection to the Settlement Motion and the Trustee/Razorback
     Settlement Motion ................................................................................................... 9

5.   The Funds Sue the Berenfeld Defendants.......................................................... 10

6.   The Evidentiary Hearing....................................................................................... 11

7.   The Memorandum Opinion and Bar Order......................................................... 12

ARGUMENT ........................................................................................................................ 14

     Point I: The Court Should Vacate the Bar Order Because the Bankruptcy
     Court Lacked Subject Matter Jurisdiction to Bar Independent Claims ......................... 14

     Point II: The Court Should Vacate the Bar Order Because
     the Bar Order is not Fair and Equitable ........................................................................ 19

          1.   A pro rata distribution fails to compensate the Funds for their
               independent claims................................................................................... 19

          2.   The Bankruptcy Court abused its discretion in suggesting that the
               Funds' independent claims are flawed. .................................................. 22

CONCLUSION...................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*AAL High Yield Bond Fund v. Deloitte & Touche LLP*,
  361 F.3d 1305 (11th Cir. 2004) ...............................................................8, 12, 17, 19

*Gerber v. MTC Electronic Techs. Co., Ltd.*,
  329 F.3d 297 (2d Cir. 2003)...............................................................................17, 18

*In re Certified HR Servs. Co.*,
  Case No. 05-22912-BKC-RBR (Bankr. S.D. Fla. Mar. 12, 2009) .........................15

*In re Dreier*,
  Nos. 10 Civ. 4758(DAB), 10 Civ. 5669(DAB), 2010 WL 3835179 (S.D.N.Y. Sept.
  10, 2010) .................................................................................................................15

*In re First NLC Fin. Servs., LLC*,
  Case No. 08-10632-BKC-PGH (Bankr. S.D. Fla. Mar. 12, 2009) .........................15

*In re HealthSouth Corp. Sec. Litig.*,
  572 F.3d 854 (11th Cir. 2009) ...........................................................3, 8, 12, 17, 18, 19

*In re Lemco Gypsum, Inc.*,
  910 F.2d 784 (11th Cir. 1990) .............................................................3, 12, 15, 23

*In re Munford, Inc.*,
  97 F.3d 449 (11th Cir. 1996) ...................................................2, 8, 13, 15, 16, 19, 20

*In re Rothstein Rosenfeldt Adler, P.A.*,
  No. 09-34791-BKC-RBR, 2010 WL 3743885 (Bankr. S.D. Fla. Sept. 22, 2010) .................15

*In re S & I Investments*,
  421 B.R. 569 (Bankr. S.D. Fla. 2009) ...................................................................15

*In re Solar Cosmetic Labs, Inc.*,
  No. 08-15793-BKC-LMI, 2010 WL 3447268 (Bankr. S.D. Fla. Aug. 27, 2010) .............12, 15

*In re U.S. Oil and Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) .............................................................8, 16, 17, 19

*TBG, Inc. v. Bendis*,
  36 F.3d 916 (10th Cir. 1994) ...............................................................................15

**OTHER**

28 U.S.C. § 157..................................................................................................................16

28 U.S.C. § 158....................................................................................................................2

Fed.R.Bankr.P. 8001...........................................................................................................2

Appellants Platinum Partners Value Arbitrage Fund LP ("Platinum"), Centurion Structured Growth LLC ("Centurion") and Level 3 Capital Fund LP ("Level 3") (collectively, the "Funds"), respectfully appeal from the *Memorandum Opinion Granting Trustee's Motion to Compromise Controversy with Berenfeld Spritzer Schechter & Sheer [D.E. 1123] and Motion to Compromise Controversy with Razorback [D.E. 1204]* [ECF No. 1307] (the "Memorandum Opinion") and the related *Bar Order Pursuant to Settlement Agreement Between Trustee Herbert Stettin and Berenfeld Spritzer Shechter & Sheer, LLP* (the "Bar Order") [ECF No. 1320].[1]

## INTRODUCTION

This appeal concerns the bounds of the subject matter jurisdiction of a bankruptcy court. In approving a settlement between a bankruptcy trustee and the debtor's accountants, the Bankruptcy Court issued a Bar Order that permanently enjoins the Funds (who are not creditors of the bankruptcy estate) from bringing and pursuing claims for *independent* damages against the accounting firm and its principals, who defrauded the Funds out of more than $20 million. The Bankruptcy Court entered the Bar Order even though the Funds are not to receive any consideration for being deprived of their claims. This is in stark contrast to another investor claimant group, the "Razorback Plaintiffs," whom the chapter 11 trustee agreed should receive $5 million in cash in exchange for their agreement to dismiss their claims against the accounting firm and its principals which are virtually identical to the Funds' claims against the very same parties.

---

[1] The Memorandum Opinion and Bar Order are attached as Exs. **A** and **B** to the Funds' Appendix ("App.").

The Funds respectfully submit that (i) the Bankruptcy Court had no jurisdiction to enter the Bar Order, and (ii) the Bar Order unfairly and inequitably deprived the Funds of valuable property rights without compensation. The Bar Order should be vacated.

The Funds respectfully request oral argument.

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction over appeals from final judgments of bankruptcy courts by virtue of 28 U.S.C. § 158(a) and Fed.R.Bankr.P. 8001. The Memorandum Opinion and related Bar Order constitute a final judgment of the Bankruptcy Court.

## STATEMENT OF THE ISSUES PRESENTED FOR APPELLATE REVIEW

1.    (a)    Did the Funds assert claims against the accounting firm and its partners that were independent of the claims asserted by the Trustee against the accounting firm? (The Bankruptcy Court erroneously answered in the negative.)

(b)    Did the Bankruptcy Court have subject matter jurisdiction to issue the Bar Order and enjoin the Funds from suing the accounting firm and its partners for claims that are independent of those asserted by the chapter 11 trustee against the accounting firm? (The Bankruptcy Court relied on its erroneous answer to 1(a), and answered in the affirmative.)

2.    Did the Bar Order provide the Funds with fair and equitable compensation for the deprivation of their claims against the accounting firm and its principals? (The Bankruptcy Court erroneously answered in the affirmative.)

## APPLICABLE STANDARDS OF APPELLATE REVIEW

Legal conclusions are reviewed *de novo*.[2]   Findings of fact are reviewed for "clear error."[3]  Discretionary determinations are reviewed for abuse of discretion.[4]

---

[2] *See In re Munford, Inc.*, 97 F.3d 449, 453 (11th Cir. 1996).

2

## STATEMENT OF THE CASE AND OF THE FACTS

The Funds appeal from Orders of the Bankruptcy Court which (a) approved the settlement of an adversary proceeding brought by Herbert Stettin (the "Trustee"), in his capacity as the chapter 11 trustee of the Rothstein Rosenfeldt Adler, P.A. ("RRA"), against Berenfeld Spritzer Shechter & Sheer, LLP ("Berenfeld"), (b) authorized the division of insurance proceeds among the RRA estate and the Razorback Plaintiffs (defined below), and (c) included the Bar Order that

> shall act as an injunction against any person or entity in favor of Berenfeld Spritzer Shechter & Sheer LLP, its employees, and its partners, including, Tracy D. Weintraub, Gary Berkowitz, Brian Leitstein, and any successors and their partners, and employees (collectively, "Berenfeld") in regard to any and all matters arising out of any involvement of Berenfeld whatsoever in transactions, acts, or events in any manner related to Scott W. Rothstein ("Rothstein"), RRA and/or Banyon 1030-32 LLC and its predecessors, affiliates, successors, and related entities (collectively, "Banyon"). . . . [5]

### 1.    The Parties

On November 10, 2009, four petitioning creditors commenced an involuntary chapter 11 proceeding against RRA.  On November 20, 2009, the United States Trustee's office appointed the Trustee to serve as the chapter 11 trustee in the RRA case.  On November 25, 2009, the Bankruptcy Court ratified the Trustee's appointment.  On that same day, RRA consented to the entry of an Order for Relief under chapter 11 of the Bankruptcy Code.[6]

Prior to the commencement of the RRA case, Scott Rothstein ("Rothstein") operated a now notorious fraudulent scheme.[7]  Rothstein represented to prospective investors that clients of

---

[3]  *See In re Lemco Gypsum, Inc.*, 910 F.2d 784, 786 (11th Cir. 1990).

[4]  *See In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 858 (11th Cir. 2009).

[5]  App. Ex. B, Bar Order at ¶ 3.

[6]  *See* ECF Nos. 1, 35, 55, 66 in *In re Rothstein Rosenfeldt Adler, P.A.*, Case No. 09-34791-RBR.

[7]  On June 9, 2010, United States District Judge James I. Cohn sentenced Rothstein to 50 years for his crimes.  *See United States v. Rothstein*, 09-60331-JIC (S.D. Fla. 2009).

3

RRA had settled claims and were entitled to a stream of payments over an extended period of time.  Rothstein also represented that those clients were desirous of assigning their right to the periodic settlement payments in exchange for an immediate discounted lump sum payment. Numerous investments in such settlements were made through Banyon 1030-32, LLC, a Delaware limited liability company, and affiliated entities (the "Banyon Entities").[8]

Between April 2008 and November 2008, the Funds entered into separate credit agreements with three Banyon Entities to lend approximately a quarter of a billion dollars, in the aggregate, on a revolving basis.[9]  The loans were secured by various assets and guarantees and used by the Banyon Entities to purchase settlements as aforesaid.[10]  On a net basis (i.e., monies lent versus monies repaid), the three Banyon Entities collectively owe more than $20 million to the Funds.[11]  The Funds have *not* filed proofs of claim in the RRA estate.  Pursuant to the separate security agreements executed by the Banyon Entities, as attorney-in-fact, the Funds did file precautionary proofs of claim on behalf of the three Banyon Entities. The Banyon Entities supplanted these precautionary proofs of claim by filing their own proofs of claim against the RRA estate.[12]

---

[8]  *See Complaint* filed in *Stettin v. Berenfeld Spritzer Schechter & Sheer, LLP (In re Rothstein Rosenfeldt Adler, P.A.)*, Adv. Pro. No. 10-03485-RBR at ¶¶ 9,15-21 (App. Ex **C**) (the "Trustee/Berenfeld Complaint").  The Banyon Entities are owned by George Levin and Gayla Sue Levin.  On June 25, 2010, the Funds filed an involuntary chapter 7 petition against Gayla Sue Levin (Case No. 10-27946-BKC-RBR).  On August 12, 2010, the Banyon Noteholders (defined below) filed an involuntary chapter 7 petition against George Levin (Case No. 10-33696-BKC-RBR).  On August 12, 2010, the Banyon Noteholders also filed an involuntary chapter 7 petition against Banyon 1030-32, LLC (Case No. 10-33691-BKC-RBR).

[9]  The terms of the credit agreements are set forth in greater detail in the Funds' *Objection to Transfer*, filed in *In re Gayla Sue Levin*, Case No. 10-27946-RBR at ¶¶ 1-3 (App. Ex. **D**).  On April 3, 2008, Centurion entered into a credit agreement with Banyon Funding, LLC.  On June 26, 2008, Platinum entered into a credit agreement with Banyon Investments LLC.  On November 3, 2008, Level 3 entered into a credit agreement with Banyon Resources, LLC.  Each of these Banyon Entities is a Nevada limited liability company.

[10]  *See Complaint* filed in *Platinum Partners Value Arbitrage Fund LP, et al. v. Berenfeld Spritzer Schechter & Sheer, LLP*, Case No. 1:10-cv-24540-FAM, at ¶ 2 (App. Ex. **E**) (the "Funds/Berenfeld Complaint").

[11]  *See* Dec. 21, 2010 Hr'g Tr. at 187:9-22 (App. Ex **F**).

[12]  *See* Banyon Entities' proofs of claim filed by the Funds and supplanted by the Banyon Entities

Prior to the commencement of the RRA case, other entities similarly invested in or loaned monies to various of the Banyon Entities for the purchase of the settlement payment streams purportedly due RRA clients.  By their objection to the Bar Order in the bankruptcy case, the Razorback Plaintiffs claim to have lost approximately $160 million in this manner.[13]

On November 20, 2009, the Razorback Plaintiffs commenced an action in Broward County Circuit Court against Berenfeld and certain of its partners and others emanating from Rothstein's scheme.[14]  The Razorback Plaintiffs' latest amended complaint includes 1,263 causes of action against 26 defendants, including Platinum and Centurion.[15]  In turn, the Funds counterclaimed against the leading Razorback Plaintiffs for their participation in Rothstein's fraudulent scheme.  Unlike the Funds, the Razorback Plaintiffs filed proofs of claim in the RRA case.

Other investors who identify themselves as the "Banyon Noteholders" claim to have lost more than $15 million as a result of Rothstein's scheme.[16]  The Banyon Noteholders commenced a federal court action against Berenfeld and others in the United States District Court, District of Connecticut.[17]

---

(Composite App. Ex. **G**).

[13]   *See Razorback Victims' Objection to Trustee's Motion to Approve Settlement with Berenfeld Spritzer Shechter & Sheer, and for Entry of Bar Order* (the "Razorback Objection") (App. Ex. **H**).  The Razorback Plaintiffs are identified in footnote 1 of the Razorback Objection.

[14]   The state court litigation is styled *Razorback, et al. v. Rothstein, et al.*, CASE NO.: 09-062943 (Fla. 17th Cir. Ct 2009).

[15]   *See* App. Ex. F, Dec. 21, 2010 Hr'g Tr. at 73:4-8.

[16]   *See Banyon Noteholders' Joinder in Razorback Victims' Objection to Trustee's Motion to Approve Settlement with Berenfeld Spritzer Shechter & Sheer, and for Entry of Bar Order* (App. Ex. **I**) (the "Banyon Noteholders Joinder").  The Banyon Noteholders are set forth in the Banyon Noteholders Joinder.

[17]   *See Marilyn P. LaBonte, et al.  v. Gayla Sue Levin, et al.*, Case No. 3:10-cv-00853-MRK (D. Conn. Jun. 2, 2010).  A third cohort, the FEP Victims Group, alleges losses of approximately $20 million through investments or loans to various Banyon Entities.  *See FEP Victims Group's Joinder in Objections to Motion to Approve Settlement with Berenfeld Spritzer Shechter & Sheer LLP* and separately filed *Supplemental Objection* (App. Ex. **J**) (the "FEP Victims Group Objection").  A fourth group claims to have lost approximately $4 million after loaning money to Banyon 1030-32, LLC.  *See Objection to Trustee's Motion to Approve Settlement with Razorback*

Berenfeld prepared RRA's tax returns and compiled its financial statements. From July 2007 until closure of RRA in early November 2009, Berenfeld was engaged to: prepare RRA's overdue tax return for 2005 and RRA's tax returns for 2006 and 2007; provide tax consulting and accounting services such as the compilation of financial statements, year-end closure of the books, bank account reconciliations; and, provide staffing for RRA's internal booking operations, and credit card reconciliations.[18] Separately, Berenfeld served as auditors to the Banyon Entities. Between September 2008 and February 2009, Berenfeld conducted an audit of the Banyon Entities for the period ended December 31, 2007 and a review for the six month period ended June 30, 2008 (the "Audit Opinion").[19] On December 17, 2010, Berenfeld filed state-court dissolution proceedings as a result of its potential liability relating to RRA and the Banyon Entities.[20]

The Berenfeld partners responsible for the RRA and Banyon Entities engagements included Tracy Weintraub, Gary Berkowitz and Brian Leitstein (the "RRA Relationship Partners").[21] Mr. Weintraub was Rothstein's childhood friend.[22]

Prior to RRA's chapter 11 case, Lexington Insurance Company ("Lexington") issued an Accountants Professional Liability Policy (the "Policy") to Berenfeld, but no partner or employee was a named insured. The Policy is a claims-made policy and covers claims submitted to Lexington for the period December 21, 2008 to December 21, 2009, and thereafter to the extent that claims submitted beyond the one-year period relate to earlier noticed claims. The

---

*Plaintiffs to Resolve the Razorback Plaintiffs' Objection* (the "Circle K Objection") (App. Ex. **K**).

[18]   *See* App. Ex. C, Trustee/Berenfeld Complaint at ¶ 26.

[19]   *See id.* at ¶ 27.

[20]   *See* App. Ex. F, Dec. 21, 2010 Hr'g Tr. at 164:13-15.

[21]   *Id.* at ¶¶ 3, 22-24, 37. *See also* July 16, 2010 Letter from William R. Scherer, Esq. to Jane Moscowitz, Esq. and Pam Perry, Esq. (App. Ex. **L**).

[22]   *See* App. Ex. C, Trustee/Berenfeld Complaint at ¶ 23.

Policy affords up to $10 million in coverage, subject to various limits and exclusions, and is not a "burning policy."[23]

## 2.    The Trustee's Adversary Proceeding Against Berenfeld

On August 4, 2010, the Trustee commenced an adversary proceeding against Berenfeld but not any of its partners or employees.  The Trustee identified a litany of facts supporting his assertion that Berenfeld breached its duties as tax advisor to RRA.[24]  Although the Trustee sought damages against Berenfeld based solely upon Berenfeld's liability to the RRA estate and not the Banyon Entities (as he is only a fiduciary to the RRA estate), he nevertheless alleged a multitude of facts demonstrating that Berenfeld breached its duties as auditor to the Banyon Entities as well.[25]

## 3.    The Settlement Motions & Objections

On November 3, 2010, the Trustee filed his *Motion to Approve Settlement with Berenfeld Spritzer Shechter & Sheer, LLP and for Entry of Bar Order* (the "Settlement Motion") and attached a copy of the settlement agreement (the "Settlement") between the Trustee, Berenfeld, Lexington, and the RRA Relationship Partners.[26]  The Settlement provides, among other things, for Lexington to pay the full policy limit of $10 million to the Trustee (the "Settlement Payment").  The Settlement is contingent upon final, non-appealable orders approving the Settlement and the Bar Order.[27]

Numerous parties filed objections to the Settlement and the proposed Bar Order.  The

---

[23] *See* Accountants Professional Liability Policy (App. Ex. **M**); *see also* App. Ex. F, Dec. 21, 2010 Hr'g Tr. at 197:13-18.

[24] *See* App. Ex. C, Trustee/Berenfeld Complaint at ¶ 48.

[25] *Id.* at ¶¶ 27, 37, 48.

[26] The Settlement Motion is App. Ex. **N**.  On November 19, 2010, Berenfeld filed a joinder to the Settlement Motion, which is attached as App. Ex. **O**.

[27] As drafted, Lexington is not required to pay the Settlement Payment as long as this, or any, appeal is pending.

Razorback Objection complained about the Trustee's entitlement to the full $10 million of coverage. They objected vociferously to any injunction in respect of their independent claims. They asserted, in part, that the Bankruptcy Court "lacks jurisdiction to grant the extraordinary broad bar order requested by the Trustee. . ." under *In re Munford, Inc.,* 97 F.3d 449 (11th Cir. 1996), *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305 (11th Cir. 2004), and *In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854 (11th Cir. 2009).[28] Similarly, on November 16, 2010, the Banyon Noteholders filed the Banyon Noteholders Joinder, which objected to the proposed Bar Order on the grounds that the Banyon Noteholders possess independent claims against Berenfeld. The FTP Victims Group, Circle K and the United States Trustee also filed objections to the Settlement and proposed Bar Order.[29]

On November 23, 2010, the Trustee filed his Response to the Razorback Objection (the "Trustee Response").[30] As to the propriety of the proposed Bar Order, the Trustee principally argued that its preclusive reach was appropriate under *In re U.S. Oil and Gas Litig.*, 967 F.2d 489 (11th Cir. 1992), because of the "interrelatedness" of the claims asserted by the Trustee and the Razorback Plaintiffs against Berenfeld. The Trustee acknowledged, however, that "the estate's claims, unlike the Razorback's claims, arise from RRA's direct contractual claims against Berenfeld."[31] Nevertheless, the Trustee disputed whether the Razorback Plaintiffs possess independent claims:

> Further, there is a serious question whether, in fact, Razorback's claims should be viewed as "independent." Razorback asserts no damages against Berenfeld different in kind from other RRA investors or creditors. While Razorback asserts that it was positioned to rely on Berenfeld's audits, the harm it complains of is that Berenfeld failed to observe "red flags" which, if seen, would have stopped the

---

[28] *See* App. Ex. H, Razorback Objection at 1, 4-6.

[29] *See* App. Exs. I, J and K. The United States Trustee's objection is App. Ex. **P**.

[30] The Trustee Response is App. Ex. **Q**.

[31] *See id.* at 10.

8

Ponzi scheme.  These allegations are virtually identical to those of the Trustee's. Thus, Razorback has not plead a particularized injury.[32]

On December 9, 2010, the Trustee filed his *Motion to Approve Settlement with Razorback Plaintiffs to Resolve the Razorback Plaintiffs' Objection* (the "Trustee/Razorback Settlement Motion").[33]   In substance, the Trustee sought approval of his settlement with the Razorback Plaintiffs whereby they would withdraw their objection to the Settlement Motion in exchange for half of the $10 million being paid by Lexington under the Settlement.[34]  Just whom the Razorback Plaintiffs intend to share their portion of the Settlement Payment with is unclear until the Razorback Plaintiffs, after the fact, so apprise the Trustee.[35]

### 4.   The Funds File an Objection to the Settlement Motion and the Trustee/Razorback Settlement Motion

On December 17, 2010, the Funds timely objected to the Settlement Motion and the Trustee/Razorback Settlement Motion (the "Funds Objection").[36]  The Funds objected on the following grounds:  First, the Funds' claims against Berenfeld could not be enjoined because they are entirely independent of the claims of RRA asserted against Berenfeld by the Trustee and are for damages that are unrelated to the prospect of any liability of the Funds to the Trustee. Second, the effect of the Bar Order would be to deprive the Funds of access to the insurance proceeds, as well as all of their claims against individual Berenfeld partners, in exchange for no compensation whatsoever and would thereby result in a taking for the benefit of the RRA estate (and collaterally, the Razorback Plaintiffs).  Third, the Funds are not creditors of RRA; unlike

---

[32]  *Id.* at 11-12.  The Trustee similarly rejected the argument that the *in pari delicto* doctrine applies.  *See id.* at 12-13,15.

[33]  The Trustee/Razorback Settlement Motion is App. Ex. **R**.

[34]  *See id.* at 4, n. 4.  *See also* App. Ex. F, Dec. 21, 2010 Hr'g Tr. at 75:17-25; 76:1-23.

[35]  *See* App. Ex. F, Dec. 21, 2010 Hr'g Tr. at 104:2-25; 105:1-11.

[36]  The Funds Objection is App. Ex. **S**.

the Razorback Plaintiffs, the Funds have not asserted claims against RRA's estate and therefore would not be entitled to participate *pro rata* in the proceeds of Berenfeld's insurance policy brought into the RRA estate.[37]

## 5.     The Funds Sue the Berenfeld Defendants

On December 20, 2010, the Funds filed the Funds/Berenfeld Complaint in this Court against Berenfeld and the RRA Relationship Partners (the "Berenfeld Defendants") based on diversity of citizenship.[38]   The Funds/Berenfeld Complaint alleges state law claims for negligent misrepresentation and for civil conspiracy to defraud against the Berenfeld Defendants. The Berenfeld Defendants are liable to the Funds for negligence because they knew or had reason to know that the Audit Opinion was going to be used to induce the Funds to make advances under their loans to the Banyon Entities, and that the Funds would rely on the Audit Opinion in deciding whether to make such advances.  In addition, the Berenfeld Defendants are liable to the Funds for civil conspiracy to defraud because they knowingly acted in concert with Rothstein to implement a fraudulent scheme.  As a result of the negligence and fraud of the Berenfeld Defendants, the Funds lost more than $20 million, on a cash-in/cash-out basis.[39]

---

[37] *See id.* at 2-4.

[38] *See* App. Ex. E, Funds/Berenfeld Complaint.

[39] *See id.* at ¶¶ 3, 44-78.

6.      **The Evidentiary Hearing**

On December 21, 2010, the Bankruptcy Court conducted an evidentiary hearing on the Settlement Motion, the Trustee/Razorback Settlement Motion and the proposed Bar Order (the "Evidentiary Hearing").[40]   The testimony confirmed that the Funds have alleged independent claims against the Berenfeld Defendants.  At the Evidentiary Hearing, the Trustee (a lawyer and jurist) testified that while "interrelated" to Rothstein and RRA, the Funds' claims against Berenfeld are independent in that they could be asserted whether or not the Trustee asserted any claims against Berenfeld on behalf of the RRA estate.[41]  Similarly, Lexington's attorney testified that based on the allegations set forth in the Funds/Berenfeld Complaint, the Policy would cover liability emanating from such independent claims.[42]

Testimony was also elicited that the intent of the Bar Order is to enjoin known and unknown independent claims, such as the Funds' claims.  Lexington believed that in order to fulfill its fiduciary duty to Berenfeld, it needed to bar such independent claims of the Funds and others.[43]  Berenfeld's managing partner testified that Berenfeld sought to bar independent claims so that his partners could "get on with their careers, and to try and rebuild practices.  The bar order is the best way to handle that."[44]

The testimony was also uncontroverted that, unlike the Funds, the Razorback Plaintiffs are being compensated for the extinguishment of their Berenfeld claims.  The Trustee testified that the $5 million payment to the Razorback Plaintiffs is compensation for the extinguishment

---

[40]   The witnesses who testified at the Evidentiary Hearing were Richard Pollack and Joseph Glick of Berkowitz Dick Pollack & Brandt, forensic accounts to the Trustee; Robert Scott Newman, Esq., an attorney with the law firm Marlow, Connell, Abrahms, Adler, Newman & Lewis, counsel to Lexington; Emery Sheer, the managing partner of Berenfeld; and the Trustee.

[41]   *See* App. Ex. F, Dec. 21, 2010 Hr'g Tr. at 112:18-23.

[42]   *See id.* at 139:6-14.

[43]   *See id.* at 144:11-20.

[44]   *Id.* at 171:20-25; 172:1-2.

of their independent claims against Berenfeld and its partners.[45]   The testimony was equivocal, however, in respect of whether Berenfeld would possess any assets to satisfy their unsecured creditors upon dissolution.[46]   What is clear is that, other than the Settlement Payment, neither Berenfeld nor the RRA Relationship Partners are contributing any money to the Settlement although the RRA Relationship Partners would nonetheless be protected by the Bar Order.[47]

**7.      The Memorandum Opinion and Bar Order**

In the Memorandum Opinion, the Court concluded, *inter alia*, that it possesses jurisdiction to enter the Bar Order, and that the Bar Order is fair and equitable.   As to subject matter jurisdiction, the Bankruptcy Court relied on the Eleventh Circuit's decision in *In re Lemco Gypsum, Inc.*, 910 F.2d 784 (11th Cir. 1990), and an unpublished decision, *In re Solar Cosmetic Labs, Inc.,* No. 08-15793-BKC-LMI, 2010 WL 3447268 (Bankr. S.D. Fla. Aug. 27, 2010), to find that it possessed subject matter jurisdiction to bar the independent claims of the Funds against Berenfeld.   The Bankruptcy Court also rejected argument that more recent Eleventh Circuit precedent establish a *per se* rule that a bar order cannot enjoin independent claims but only indemnity claims, contribution claims and other claims based on the liability of non-settling defendants to the plaintiff.[48]

---

[45]  *See id.* at 112:24-25; 113:1-4.

[46]  The trustee's forensic accountant opined (in the absence of a written report) that, but for the Policy, Berenfeld would not possess any assets after the firm satisfies claims to its secured lender and landlord.   He also testified that the RRA Relationship Partners lack significant assets.   *See id.* at 61:4-7; 66:6-11.   Yet Berenfeld's managing partner testified that Berenfeld may make distributions to Berenfeld shareholders who were owed money by the firm (*see id.* at 168:2-16), as well as to Berenfeld's non-insider unsecured creditors.   *See id.* at 170:8-13.   Of course, any such distributions to shareholders would likely be avoidable.

[47]  *See id.* at 167:18-19.

[48]   *See AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305 (11th Cir. 2004); *In re HealthSouth Corp. Sec. Litig.,* 572 F.3d 854 (11th Cir. 2009).

The Bankruptcy Court considered relevant testimony that the Bar Order is essential to the willingness of Lexington and Berenfeld to settle with the Trustee.[49]  The Bankruptcy Court also found important testimony that the Berenfeld Defendants possess little remaining assets.[50]  The Bankruptcy Court concluded that the barred claims are "interrelated" to the Trustee's claims against Berenfeld because the latter claims "invoke[] both the Banyon audit and the provision of accounting services to RRA as critical to [Berenfeld's] alleged negligence and wrongdoing."[51]

As to whether the Bar Order is fair and equitable, the Bankruptcy Court borrowed from the four-part fair-and-equitable test enunciated in *In re Munford*, 97 F.3d 449 (11th Cir. 1996), which concerns claims against non-debtors for contribution and indemnification.[52]  The Bankruptcy Court found that the independent claims subject to the Bar Order are factually interrelated to the Trustee's claims.[53]  As to the merits of the Funds' claims against Berenfeld, the Bankruptcy Court found that certain exhibits "suggest[] that the Funds did not rely upon any audit issued by [Berenfeld]."[54]  The Bankruptcy Court also found that "the Funds are, in all probability, a source of recovery. . ." to the RRA estate by virtue of the Trustee's "clawback" adversary proceeding against the Funds, which the Trustee commenced the night before the Evidentiary Hearing.[55]

---

[49]  *See* App. Ex. A, Memorandum Opinion at 18.

[50]  *Id.*

[51]  *Id.* at 19.

[52]   The *Munford* test considers (i) the interrelatedness of the claims that the bar order precludes; (ii) the likelihood of barred parties to prevail on the barred claim; (iii) the complexity of the litigation; and (iv) the likelihood of depletion of the resources of the settling parties.  *See id.* at 20 (citing *In re Munford*, 97 F.3d at 449).

[53]  *Id.*

[54]  *Id.* at 21.

[55]  *Id.  See Complaint* filed in *Stettin v. Centurion Structured Growth LLC, et al.*, Adv. Pro. No. 10-03802-RBR (the "Clawback Complaint") (App. Ex. **T**).

As to the complexity of the litigation, the Bankruptcy Court found that the litigation between the Trustee and Berenfeld would be complex and protracted.[56]   As to the likely depletion of resources of the settling parties, the Bankruptcy Court found that "[t]he record is replete with uncontroverted testimony that the only [Berenfeld] asset available for any claimant is the Lexington insurance policy proceeds."[57]   The Bankruptcy Court also observed that the Settlement Payment would "reach either directly, or indirectly through Banyon, all of the parties affected."[58]

## ARGUMENT

### Point I: The Court Should Vacate the Bar Order Because the Bankruptcy Court Lacked Subject Matter Jurisdiction to Bar Independent Claims

The Bankruptcy Court erred as a matter of law in holding that it possessed subject matter jurisdiction to enjoin the Funds' independent claims against the Berenfeld Defendants.  No basis exists to dispute that the Funds possess independent claims against Berenfeld.  The Funds' claims against Berenfeld are "truly independent claims" because they do not arise solely as a result of the Trustee's suit against Berenfeld and because neither their validity nor their value are dependent upon or related to the outcome of the Trustee's claims against Berenfeld or the outcome of any other litigation involving the Funds.  Further, damages alleged by the Trustee in the Trustee/Berenfeld Complaint and the damages alleged in the Funds/Berenfeld Complaint are distinct and independent of each other.  The Funds' damages against Berenfeld are measured by the loans they made which go unpaid.

---

[56] *Id.* at 22.

[57] *Id.*

[58] *Id.*

The Funds are unaware of any contested case in which a court has barred truly independent claims such as those held by the Funds.[59]  The Bankruptcy Court principally relied on *Lemco Gypsum* in support of its jurisdictional holding, but *Lemco Gypsum* has never been interpreted to allow courts to bar truly independent claims against non-debtors.  Indeed, the case never addressed bar orders but rather the "narrow question of law" of whether a bankruptcy court possessed jurisdiction over a third party, internecine dispute between a debtor's former landlord and a purchaser of the debtor's property.[60]  The Eleventh Circuit emphasized in *Lemco Gypsum* that bankruptcy jurisdiction "cannot be extended beyond its purpose," and that is precisely what occurred when the Bankruptcy Court approved the Bar Order.[61]

The caselaw is uniform that a court may bar contribution or indemnity claims and claims measured by the non-settling defendant's liability to the plaintiff.  The Eleventh Circuit's decision in *Munford* instructs no differently.  There, the Eleventh Circuit addressed the narrow issue of whether a bankruptcy court possessed subject matter jurisdiction to bar a non-settling defendant's contribution and indemnity claims against a settling defendant in a single adversary proceeding arising out of a failed leveraged buyout.  The Eleventh Circuit held only that a sufficient "nexus"

---

[59] *See TBG, Inc. v. Bendis*, 36 F.3d 916, 928 (10th Cir. 1994) ("No court has authorized barring claims with independent damages").  The Funds are unaware of any contested case that has barred truly independent claims.  None of the cases cited by the Trustee below or by the Bankruptcy Court in the Memorandum Opinion are to the contrary.  *See In re Solar Cosmetic Labs, Inc.*, No. 08-15793-BKC-LMI, 2010 WL 3447268, at *3 (Bankr. S.D. Fla. Aug. 27, 2010) (objector repeatedly failed to offer any "plausible basis to suggest that any such claim exists" against beneficiary of proposed bar order); *In re Dreier*, Nos. 10 Civ. 4758(DAB), 10 Civ. 5669(DAB), 2010 WL 3835179, at *4 (S.D.N.Y. Sept. 10, 2010) (objector's assertion that he possessed claims against beneficiary of bar order that were independent of those held by estate creditors was "utterly unconvincing" and "grandiose"); *In re S & I Investments*, 421 B.R. 569 (Bankr. S.D. Fla. 2009) (case concerned barring of contribution and indemnification claims relating to co-defendant liability on two judgments); *In re Certified HR Servs. Co.*, Case No. 05-22912-BKC-RBR (ECF No. 2200, Bankr. S.D. Fla. Jun. 26, 2008) (directors and officers objected to a bar order covering contribution and indemnification claims); *In re First NLC Fin. Servs., LLC*, Case No. 08-10632-BKC-PGH (ECF Nos. 863, 865 Bankr. S.D. Fla. Mar. 12, 2009) (bar order entered effectively without objection or after objections resolved); *In re Rothstein Rosenfeldt Adler, P.A.*, No. 09-34791-BKC-RBR, 2010 WL 3743885, at *6 (Bankr. S.D. Fla. Sept. 22, 2010) (court specifically noted, "No creditor or interested party argued that a bankruptcy court lacks jurisdiction to enter some form of a bar order in appropriate circumstances.").

[60] *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 786 (11th Cir. 1990).

[61] *Id.* at 790.

15

existed between the settled claims in the adversary proceeding and the indemnity and contribution claims to confer jurisdiction and that the bar order was "fair and equitable" under *In re U.S. Oil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992).  *Munford* did not allude to a bankruptcy court's jurisdiction to bar independent claims against a non-debtor.

While *Munford* is the only Eleventh Circuit case to address bar orders in the context of a bankruptcy case, the Eleventh Circuit has addressed on numerous instances a district court's subject matter jurisdiction to enter bar orders.  These decisions, while not in the bankruptcy context, are equally binding because the bankruptcy court's subject matter jurisdiction is no more expansive than the district court's jurisdictional grant.[62]

In *U.S. Oil & Gas Litig.*, the Eleventh Circuit affirmed a bar order in the context of securities class action litigation.  One of the non-settling defendants objected to the entry of the bar order because the bar order would prohibit, in addition to indemnity and contribution claims, the assertion of independent claims against the settling defendant.  The Eleventh Circuit found, however, that the independent claims were "nothing more than claims for contribution or indemnification with a slight change of wording" and approved the bar order.[63]  The Eleventh Circuit explicitly stated that its decision did not address a bar order enjoining truly independent claims.[64]

More recently, the Eleventh Circuit vacated a settlement bar order entered in a securities class action that sought to preclude independent claims of non-settling defendants and remanded

---

[62] *See In re Munford*, 97 F.3d at 453 ("Although bankruptcy courts have limited jurisdiction, each district court may provide the bankruptcy court in that district with subject matter jurisdiction. . ." under 28 U.S.C. § 157(a)).

[63] *In re U.S. Oil & Gas Litig.*, 967 F.2d at 496 (quotation omitted).

[64] *See id.* at 496 n. 5.

16

to the district court for reconsideration and entry of a reasonable, fair and equitable bar order.[65] The Eleventh Circuit in *AAL High Yield Bond Fund* reiterated that its decision in *U.S. Oil & Gas Litig.* could not be read to authorize the barring of a non-settling defendant's independent claims. In vacating the district court's bar order, the Eleventh Circuit wrote that *U.S. Oil & Gas Litig.* "expressly declined to address the issue of 'truly independent claims.'"[66]

The Eleventh Circuit was even more emphatic in *In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854 (11th Cir. 2009), against the barring of independent claims. The Eleventh Circuit went so far as to write that the barring of a non-settling defendant's independent claims may be *per se* inappropriate.[67] The case involved securities class action litigation in which a non-settling defendant asserted contractual claims against a settling defendant for indemnification of a settlement payment he might make to the underlying plaintiffs, as well as claims for the advancement of legal defense costs. Similar to *U.S. Oil & Gas Co.*, however, the Eleventh Circuit affirmed the bar order because the non-settling defendant lacked truly independent claims.

In the course of its analysis of the proposed bar order before it, the Eleventh Circuit cited with approval to then Judge Sotomayor's opinion in *Gerber v. MTC Electronic Techs. Co., Ltd.*, 329 F.3d 297 (2d Cir. 2003), which squarely addressed a bar order seeking to enjoin truly independent claims. As the Eleventh Circuit recognized in *HealthSouth*, *Gerber* is exceedingly instructive. In *Gerber*, non-settling defendants appealed a bar order that barred all claims against BDO Dunwoody ("BDO"), an auditor, arising from BDO's certification of the financial statements of MTC Electronic Technologies Co., Ltd. ("MTC"), which alleged to be fraudulent

---

[65] *See AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1312 (11th Cir. 2004) (citing *id*).

[66] *Id.* at 1312.

[67] *In re HealthSouth Corp. Sec. Litig.*, 572 F.3d at 865.

and materially misrepresented.  The plaintiffs, investors in MTC, claimed to have incurred losses in excess of $15 million in reliance on MTC's financials that were audited and certified by BDO.[68]  The non-settling defendants objected to a bar of their independent claims against BDO.

Then Judge Sotomayor characterized the issue as less one of independent "claims" than independent "damages" and held that a bar order required modification to "ensure that the only claims that are extinguished are claims where the injury is the non-settling defendants' liability to the plaintiffs."[69]  As noted by the Eleventh Circuit in *HealthSouth*, the *Gerber* court contemplated that a non-settling defendant may have claims other than indemnity and contribution claims against a settling defendant and held, without determining the merits of such claims, that they cannot be barred because the injury is not the non-settling defendant's liability to the plaintiff.[70]  As a result, the *Gerber* court modified the bar order at issue to extinguish only contribution and indemnity claims, and any other claims in which the injury is the non-settling defendant's liability to the plaintiff.[71]

In adopting the reasoning of *Gerber* and similar rulings in other circuits, the *HealthSouth* court indicated that a bar order may affect claims incurred "on account of [the non-settling defendant's] liability or the risk thereof to the underlying plaintiffs."[72]  As the independent claims of the Funds against Berenfeld do not arise on account of and cannot be measured by the prospect of any purported liability of the Funds to the RRA estate, the Funds' claims cannot be barred consistent with *HealthSouth* and *Gerber*.  The Bankruptcy Court erred as a matter of law in concluding that it possessed subject matter jurisdiction to bar the Funds' independent claims.

---

[68]  *See Gerber*, 329 F.3d at 300-01.

[69]  *Id.* at 307.

[70]  *See id*. at 306-07; *HealthSouth*, 572 F.3d at 863-64.

[71]  *See Gerber*, 329 F.3d at 307.

[72]  *HealthSouth*, 572 F.3d at 864.

For this reason, the Bar Order should be vacated.

**Point II: The Court Should Vacate the Bar Order**
**Because the Bar Order is not Fair and Equitable**

A bar order must be "fair and equitable."[73]   Apart from the lack of subject matter jurisdiction, the Bar Order should be vacated because it is not fair and equitable to the Funds, as it deprives them of property without compensation.  In this Circuit (and elsewhere), when a bar order is issued, the non-settling defendant must be compensated, typically through a dollar-for-dollar (*pro tanto*) or greater credit against the plaintiff's claims.[74]

The Bankruptcy Court failed to provide the Funds with any credit for barring their claims against the Berenfeld Defendants.  The absence of any such compensation underscores the independence of the Funds' claims from the Trustee's claims and the resulting lack of subject matter jurisdiction.  But if this Court finds that the Funds' claims are not independent, a *pro tanto* or greater credit must be provided to the Funds as compensation for the deprivation of their claims.  We set forth below why the Bar Order fails the fair and equitable test given that the Funds are not receiving any compensation for the extinguishment of their claims.

1.      **A *pro rata* distribution fails to compensate the Funds for their independent claims.**

Instead of requiring that the Funds receive a credit in the amount of the Settlement Payment for any future liability to the Trustee, the Bankruptcy Court cut new ground in finding that the *potential* ability by the Funds to share in *pro rata* distributions alongside RRA creditors

---

[73]  *See In re Munford*, 97 F.3d at 455.

[74]  *See id.* at 455-56 (upholding fairness of *pro tanto* credit); *In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 861-62 (11th Cir. 2009) (upholding fairness of *pro tanto* or greater credit); *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1312 (11th Cir. 2004) (vacating bar order where district court "expressed no rationale or authority for barring claims without a settlement credit or 'set off. . .'"); *cf In re U.S. Oil & Gas Litig.*, 967 F.2d at 494 (while ordinarily "the court is concerned with calculating the proper 'offset' to ensure that plaintiffs do not enjoy a double recovery against nonsettling defendants. . .," that concern was absent in this case because *all* defendants agreed to settle with plaintiffs, and objector "risked no further liability from plaintiffs").

is sufficient to render the Bar Order fair and equitable.[75]  This is a far cry from the holding in *Munford*, which held that a dollar-for-dollar credit against any subsequent judgment in favor of a plaintiff against a non-settling defendant is fair and equitable compensation for the extinguishment of indemnity and contribution claims.[76]  The *Munford* credit works when the non-settling defendant's damages are measured by its liability to the plaintiff.  Such correlation is absent here.  The *Munford* credit underscores the difficulty with barring the Funds' claims, whether styled independent or otherwise, because the Funds' claims against Berenfeld are not measured by the Trustee's claims against the Funds.  No matter the outcome of any litigation against the Funds, the Funds possess distinct damages against the Berenfeld Defendants.  The Bankruptcy Court recognized this fact but chose to nevertheless approve the Bar Order without any compensation to the Funds.

Rather than condition the Bar Order on the provision of a *pro tanto* or greater credit to the Funds, the Bankruptcy Court merely speculated that the Funds may share in *pro rata* distributions with creditors of the RRA estate.  The Bankruptcy Court noted that the Banyon Entities filed proofs of claim against RRA, and that the Funds have claims against the Banyon Entities, and so the Funds "will receive the benefit of the Settlements."[77]  No proof of claim, however, has been filed by the Funds based on amounts claimed to be owed to the Funds by the Banyon Entities.  Similarly, no assurance exists that the Funds will receive recoveries indirectly through the Banyon Entities as their claims have not been allowed to date.  Importantly, the Bankruptcy Court overlooked that the Trustee seeks to disallow and/or equitably subordinate all

---

[75]  *See* App. Ex. A, Memorandum Opinion at 15 ("To the extent any of the objecting parties are either creditors of the RRA estate or Banyon, they will receive the benefits of the [Berenfeld] Settlement and Allocation Motion.").

[76]  *See Munford*, 97 F.3d at 455.

[77]  *See* App. Ex. A, Memorandum Opinion at 10-11.

proofs of claim filed by the Funds on behalf of the Banyon Entities.[78]  The assumption that the Funds will be entitled to share in recoveries alongside other RRA creditors is simply too attenuated to conclude that the Bar Order is fair and equitable.

The Trustee can withdraw the Counts of the Clawback Complaint that seek disallowance and/or equitable subordination of the Banyon Entities' proofs of claim.  The Trustee could also guarantee that the Funds are to receive a credit in the amount of $10 million should he prevail in clawback litigation.  Of course, a $10 million credit is simply the amount of the Settlement Payment and not the size of the Funds' claims against the Berenfeld Defendants.  In any event, the Trustee has offered no such consideration to the Funds.

The Bar Order is also inequitable because of the blatant collusion between the Trustee and the Razorback Plaintiffs.  After urging that the Razorback Plaintiffs should be bound by the Bar Order with no compensation because they "assert[] no damages against Berenfeld different in kind from other RRA investors or creditors," and that "the harm" they allege is "virtually identical to" that alleged by the Trustee,[79] the Trustee did an about-face and elicited the consent of the Razorback Plaintiffs for $5 million.  The Bankruptcy Court did not even address how the Bar Order could be fair and equitable if the Razorback Plaintiffs are being paid $5 million in court-approved compensation for the deprivation of their claims against Berenfeld while the Funds are receiving nothing.

Finally, the RRA Relationship Partners (one of whom asserted the Fifth Amendment in a deposition conducted by the Trustee) are contributing nothing to the Settlement and are getting a

---

[78]  *See* App. Ex. T, Clawback Complaint Counts VII, XVI, XXIII.  Indeed, the Trustee has separately entered into a term sheet with the Levins and the Banyon Entities that would disallow any of their claims in the RRA estate if approved by the Bankruptcy Court.

[79]  App. Ex. Q, Trustee Response at 11-12.

free pass from the Trustee.  The Funds are entitled to pursue the RRA Relationship Partners directly for the damages caused to the Funds.

For these reasons, the Bar Order is grossly inequitable and an abuse of discretion and should be vacated.

## 2. The Bankruptcy Court abused its discretion in suggesting that the Funds' independent claims are flawed.

The Bankruptcy Court similarly erred in holding that the Settlement is fair and equitable based on its finding that the Funds' claims against Berenfeld may be seriously flawed.[80]  The Funds' claims are not pending before the Bankruptcy Court, and the Bankruptcy Court was not presented with any evidence that permitted it to conclude that the Funds' claims against the Berenfeld Defendants are without merit.  Most disturbing, it does not appear that the Bankruptcy Court reviewed the Funds/Berenfeld Complaint.  There is no discussion as to how or why the Funds' causes of action for negligent misrepresentation and conspiracy are somehow deficient. Instead, the Bankruptcy Court made a quantum leap of faith and judgment as it adopted the Trustee's proposed findings that "the Funds did not rely upon any audit issued by [Berenfeld]," and that the Funds "relied upon their own independent investigation of RRA and Rothstein prior to making their loans or investments, much of which predated the [Berenfeld] audit, as well as the purported verification of their agent, Michael Szafranski."[81]  These findings are not supported by any evidence and are flatly contracted by the allegations set forth in the Funds/RRA Complaint.

The Bankruptcy Court's conclusion regarding the Funds' "flawed" claims is also incorrect as a matter of law because the conclusion suggests that the Funds' could not have relied on the

---

[80]  *See* App. Ex. A, Memorandum Order at 21.

[81]  *See id.*

Berenfeld Defendants, as well as Kroll Associates, Inc. and Michael Szafranski, in making loans to the Banyon Entities.  By the Funds/Berenfeld Complaint, the Funds assert and could prove that the Berenfeld Defendants conspired with Rothstein because they not only had actual knowledge of the fraud but also took affirmative steps to conceal the fraud and, as a result, became active participants in the fraud.  Yet, the Bankruptcy Court paid short shrift to the Berenfeld Defendants' patent misconduct.  No requirement exists that the Funds must allege in their action against the Berenfeld Defendants that they relied exclusively on Berenfeld in making loans to the Banyon Entities.

Further, there was simply no evidence that the Funds did not rely on Berenfeld's audits. They were required to be provided to the Funds as lenders to the Banyon Entities.  The loans made by the Banyon Entities were revolving loans and, thus, diligence was ongoing.  The whole notion advanced by the Trustee that the Funds failed to rely on Berenfeld's audits smacks of a double standard as well.  The Trustee acknowledged that the Razorback Plaintiffs possess independent claims even though he previously criticized their claims because they had not alleged reliance on Berenfeld's audits.[82]   Apparently, the Funds are to be held to a higher standard than the Razorback Plaintiffs.

## CONCLUSION

The Bar Order epitomizes the kind of jurisdictional overreaching that the Eleventh Circuit warned against in *Lemco Gypsum*.  The Bankruptcy Court's quest to provide a single forum for all disputes relating to Berenfeld eclipsed its jurisdictional mandate.  The Bar Order should be vacated because the Bankruptcy Court lacked subject matter jurisdiction to enjoin the

---

[82] *Compare* App. Ex. F, Dec. 21, 2010 Hr'g Tr. at 89:14-15 (Testimony of the Trustee: "From what I know [the Razorback Plaintiffs] have claims that we do not have as the estate" *with* App. Ex. Q, Trustee Response at 11-12 ("Further, there is a serious question whether, in fact, Razorback's claims should be viewed as 'independent.' . . . While Razorback asserts that it was positioned to rely on Berenfeld's audits, the harm it complains of is that Berenfeld failed to observe 'red flags' which, if seen, would have stopped the Ponzi scheme.").

Funds' independent claims.  Additionally, the Bar Order is unfair and inequitable on multiple grounds, which similarly necessitates that the Court vacate the Bar Order.

Dated: April 12, 2011

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
*Co-Counsel to Appellants*
1450 Brickell Ave., Suite 2300
Miami, Florida  33131
Telephone:  305-374-7593
Facsimile:   305-351-2253

By:  ___/s/  Scott L. Baena___
   Scott L. Baena, Esq.
   Florida Bar No.  186445
   Jay M. Sakalo, Esq.
   Florida Bar No. 156310
   Jeffrey I. Snyder, Esq.
   Florida Bar No. 21281

   -and-

**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**
*Co-Counsel to Appellants*
101 Park Avenue
New York, New York 10178-0061
Telephone:  212-696-6000
Facsimile:   212-697-1559
Eliot Lauer, Esq.
Jacques Semmelman, Esq.
Gabriel Hertzberg, Esq.